## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| SARAH E. CUMMINGS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. 1:12-cv-93 |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT AND EQUITIES FUND (TIAA-CREF), COLLEGE RETIREMENT AND EQUITIES FUND (CREF), TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA (TIAA), TIAA-CREF INVESTMENT MANAGEMENT, LLC (TCIM), TEACHERS ADVISORS, INC. (TAI), AND TIAA-CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS COUNTS IV AND V OF PLAINTIFF'S
## SECOND AMENDED COMPLAINT

Defendants[1] hereby respectfully move the Court, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss with prejudice Counts IV and V of Plaintiff's Second Amended

Complaint (ECF No. 39) ("SAC"), because those state-law claims are preempted by the

Employee Retirement Income Security Act of 1974 ("ERISA").

## INTRODUCTION

The claims brought by Plaintiff Sarah Cummings ("Cummings") in this action challenge

the same practices, involve the same variable-annuity accounts governed by the same

prospectuses, and arise from the same transfer from the TIAA-CREF retirement platform to

Milliman USA under the same retirement plan as those brought by the plaintiffs in the parallel

action, *Walker/Bauer-Ramazani v. TIAA-CREF et al.*, No. 09-cv-190 (D. Vt.) ("*Walker*").  In

*Walker*, this Court dismissed original plaintiff Norman Walker's state-law claims on the ground

that they were preempted by ERISA.  *Walker* ECF Nos. 21, 34.  The Court's reasoning in *Walker*

applies equally to the state-law claims advanced by Cummings here.

Like Walker's, Cummings's state-law claims are preempted for multiple reasons:

- They "relate to" her retirement plan governed by ERISA because they purport to supersede central ERISA functions, in that they challenge the processing of her transfer request.   29 U.S.C. § 1144(a).

- Their resolution would necessarily require the Court to interpret her retirement plan and ERISA.

- They "duplicate[], supplement[], or supplant[]" her ERISA cause of action. *Id.*

Accordingly, Counts IV and V of Cummings's Second Amended Complaint must be dismissed.

---

[1]     Plaintiff purports to name "Teachers Insurance and Annuity Association of America - College Retirement Equities Fund" as a defendant, but it is not a distinct legal entity, and the acronym "TIAA-CREF" is a trade name under which various TIAA- and CREF-affiliated entities do business.

## BACKGROUND

### I.      Factual Background

Defendants accept the following allegations from Plaintiff's Second Amended Complaint

("SAC") as true solely for purpose of this motion to dismiss.  *See* SAC.  Plaintiff Sarah

Cummings is an employee of St. Michael's College ("St. Michael's" or the "College"), and a

participant in the Retirement Plan for Employees of St. Michael's College (the "St. Michael's

Plan" or "Plan").  *See* SAC ¶ 4.  Cummings alleges that the Plan is governed by ERISA.  *See id.*

¶¶ 4, 38-65.  Beginning in 1993, the Plan offered participants the opportunity to invest in TIAA

and CREF variable-annuity products.  *See id.* ¶ 12.  Cummings alleges that she was invested in

various TIAA or CREF variable-annuity accounts (the "Accounts") through the Plan.  *Id.* ¶¶ 7-8.

The Accounts' prospectuses are distributed to participants and set forth the rules

governing participation in the Accounts.  *See* Declaration of Shannon Barrett ("Barrett Decl."),

Ex. 1 (2006 CREF prospectus) ("Barrett Decl. Ex. 1"), Ex. 2 (2006 TIAA Real Estate Fund

prospectus) ("Barrett Decl. Ex. 2").[2]  The prospectuses provide that participants may request

transfers of the value of their shares, or accumulation units ("Units"), to other TIAA or CREF

Accounts or another company.  Barrett Decl. Ex. 1 at TIAA-WALKER 000182-185; Barrett

Decl. Ex. 2 at TIAA-WALKER 008750-8753.  The prospectuses also provide that, if an investor

submits a request to have the value of his or her investments transferred to other TIAA or CREF

Accounts or another company, the transaction will be effective at the end of the business day on

---

[2]      The contents of the prospectuses are set forth in Forms N-3 and S-1 that are filed with the
Securities and Exchange Commission ("SEC") and are accessible through the SEC's searchable
database.  *See* http://www.sec.gov/Archives/edgar/data/777535/000093041306003384/
c42064_485bpos.htm (CREF Account prospectus eff. May 1, 2006); http://www.sec.gov/
Archives/edgar/data/946155/000093041306003377/c41348_s1a.htm (TIAA Real Estate Account
prospectus eff. May 1, 2006).  A district court may take judicial notice of documents filed with
the SEC.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

which the relevant TIAA or CREF Account or its agent receives the request along with all required documentation, or at the end of any agreed-upon future business day after the request and required documents are received (the "Effective Date").  Barrett Decl. Ex. 1 at TIAA-WALKER 000182; Barrett Decl. Ex.2 at TIAA-WALKER 008750.  The prospectuses further specify that, to determine the amount to transfer, a participant's Units are valued as of the Effective Date.  Barrett Decl. Ex. 1 at TIAA-WALKER 00181 ("To determine accumulation unit values for transfers and cash withdrawals, we use the unit values calculated at the end of the business day on which we receive your completed request and required documents."); Barrett Decl. Ex. 2 at TIAA-WALKER 008749 ("To determine how many accumulation units to subtract for cash withdrawals and transfers, we use the accumulation unit value for the end of the business day when we receive your transaction request and all required information and documents . . . .").  The CREF prospectus also provides that, in general, Defendants will make payments on transfers within seven days after the Effective Date.[3]  Barrett Decl. Ex. 1 at TIAA-WALKER 00193 ("In general, we will make [payments for cash withdrawals and transfers to TIAA or to other companies] within seven calendar days after we've received the information we need to process a request . . . .").

In 2006, the College decided to move the Plan's recordkeeping and investments from the TIAA-CREF retirement platform to a different service-provider, Milliman USA.  *See* SAC ¶ 13. As part of the transfer process, St. Michael's collected transfer request forms from Plan participants and sent them to Defendants for processing.  *Id.* ¶¶ 15-16.  Defendants received Cummings's written transfer request, and those of most other St. Michael's College employees,

---

[3]     The TIAA Real Estate Account prospectus does not specify any period of time within which transfers or withdrawals will be completed.

on Friday, April 27, 2007.  *Id.* ¶ 17.  Defendants recorded May 1, 2007 as the Effective Date of

Cummings's request and of other St. Michael's employee requests it received on April 27.  *See*

*id.*  A check reflecting the value of Cummings's Units as of the May 1, 2007 Effective Date was

cut on May 7, 2007.  *See id.* ¶ 21-22.

Between May 1 and May 7, 2007, the per-Unit value of the Accounts in which

Cummings had been invested increased.  *See id.* ¶ 22.  The TIAA and CREF companies refer to

any such difference between the per-Unit value of an Account on the Effective Date and the per-

Unit value on the date when a transaction is fully processed as "Transactional Fund Earnings" or

"TFE."  *Id.* ¶ 23.  Consistent with their uniform practice and the terms of the prospectuses,

Defendants paid Cummings the Effective-Date value of her Units, *id.* ¶¶ 17, 21-22; *see* Barrett

Decl. Ex. 1 at TIAA-WALKER 000181; Barrett Decl. Ex. 2 at TIAA-WALKER 008749, and

recorded the TFE associated with her transfer on the TFE expense account maintained by

Defendant TIAA-CREF Individual & Institutional Services, LLC ("TC Services"), SAC ¶ 24;

*see id.* ¶ 10.  Both TFE "gains" and "losses" are recorded in this way, and gains and losses are

netted against each other.  *See id.* ¶ 25; *see also id.* ¶ 10.  Any net TFE gain that remains after

TFE gains and losses have been offset is applied to cover expenses incurred in connection with

the administration of the Accounts.  *See id.* ¶ 25.

## II.     Procedural History

Cummings and another Plan participant, Carolyn Duffy, first filed this action on May 10,

2012, asserting three counts under ERISA and two under state law.  Counts I, II, and III alleged

that Defendants breached a fiduciary duty of loyalty under ERISA, violated a so-called "duty of

impartiality" under ERISA by "compensating certain customers for their lost investment

experience but not others," and engaged in prohibited transactions in violation of ERISA

§ 406(a)(1)(D).  ECF No. 1 ¶¶ 42-56.  Counts IV and V asserted that the same conduct also

violated common-law fiduciary duties and state consumer fraud statutes.  *Id.* ¶¶ 57-65.

Cummings's and Duffy's claims largely replicated those already brought by other St.

Michael's Plan participants in *Walker*,[4] and on the same day they filed this action, Cummings

and Duffy moved to intervene in that case.  *Walker* ECF No. 140.  By that time, however, the

Court had already disposed of all of Walker's claims.  The Court had dismissed Walker's state-

law claims on preemption grounds because they impermissibly "duplicate[d], supplement[ed] or

supplant[ed]" his ERISA claims.  *Walker* ECF No. 21 at 5-6.  And the Court had entered

summary judgment for Defendants on Walker's ERISA breach of fiduciary duty and prohibited

transaction claims, holding that Walker had received everything he was entitled to and had no

viable claim against Defendants.  *Walker* ECF No. 108; *see Walker* ECF No. 143 at 23-24;

*Walker* ECF No. 186 at 3 ("Walker's claims were dismissed because Defendants demonstrated

he received what the prospectus governing his accounts required: payment within seven days

from the business day chosen for his transfer to take effect.").

The Court denied Cummings's motion to intervene because she was "no different than

Mr. Walker."  *Walker* ECF No. 215 at 8:18-19; *see id.* at 9:16-24.  The Court further noted that it

was inclined "to dismiss [Cummings's] case," *id.* at 10:10-11, and warned that, unless her

counsel "c[a]me up with some good reasons[,] Cummings is going to go away," *id.* at 15:16-17.

Cummings then filed a First Amended Complaint that maintained the same essential counts, but

removed Duffy—who was permitted to intervene in *Walker* because the Court found her

---

4       As of the date of Cummings's and Duffy's initial complaint, Walker had already asserted
claims alleging violations of common-law fiduciary duties and the Vermont Consumer Fraud Act
(*Walker* ECF No. 1 ¶¶ 35-40), and ERISA duty of loyalty and prohibited transaction claims (*id.*
¶¶ 27-34, ¶¶ 42-46).

situation factually distinguishable from Walker's, *id.* at 4:4-10, 9:20-24.  *See* ECF No. 17.  On

October 15, 2014, Cummings filed the now-operative Second Amended Complaint.

### III.     Cummings's Allegations

Cummings continues to assert in her Second Amended Complaint that Defendants

committed fiduciary violations under ERISA and engaged in ERISA prohibited transactions by

not paying her the TFE associated with her transfer to Milliman.  Cummings also continues to

assert state-law fiduciary duty claims.

In Count I, Cummings alleges that "TIAA-CREF" is an ERISA fiduciary, SAC ¶ 39, and

that "[a] fiduciary in the exercise of its duty of care must act in accordance with statutory and

regulatory requirements and in accordance with industry standards," *id.* ¶ 41.  Cummings asserts

that Defendants fell short of that standard of care in two ways.  First, Cummings alleges that TC

Services, "[a]s broker-dealer," was required to "transmit" Cummings's sell order on the date it

was received, but failed to do so.  *Id.* ¶¶ 18, 43.  Second, Cummings alleges that Defendants

failed to act in accordance with regulatory requirements or industry practice "[b]y failing to settle

Plaintiff's account within three days[.]" *id.* ¶ 44.  She further alleges that "TIAA-CREF and [TC]

Services benefit[ted] from their breach of the duty of care, because they did not pay out

investment gains generated by Plaintiff's account after May 1, 2007" and instead "used such

gains to meet their own obligations to other customers and to cover administrative expenses."

*Id.* ¶ 46.

In Count II, Cummings alleges a violation of ERISA's duty of loyalty, asserting that

"[b]y investing or keeping invested funds in Plaintiff's retirement accounts for purposes other

than her benefit after receiving her written transfer request, TIAA-CREF was not acting solely in

the interest of Plaintiff or for the exclusive purpose of providing benefits to Plaintiff or her

retirement plan, as ERISA requires." *Id.* ¶ 51.

In Count III, Cummings alleges that the same conduct amounted to a prohibited

transaction in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), because "TIAA-CREF

kept the funds in Plaintiff's retirement account invested after the date it received her written

transfer request" and "dealt with the investment gains earned by Plaintiff's funds after such date

in its own interest" by "us[ing] such investment gains to satisfy its own legal obligations to other

customers, whose accounts suffered investment losses after it failed to process their orders in

timely fashion," *id.* ¶ 57.

Count IV, which alleges "Common Law Breach of Fiduciary Duty of Care," closely

parallels Cummings's ERISA duty of care claim in Count I.  Cummings asserts that "TIAA-

CREF is a fiduciary under common law by virtue of the fact that it held the retirement accounts

of Plaintiff and other class members and exercised control and authority over such accounts after

receiving a request to transfer or distribute their funds." *Id.* ¶ 61.  She further claims that

"TIAA-CREF owed Plaintiff and other class members a contractual and fiduciary duty of care to

transmit, execute, and settle customer sell orders in accordance with regulatory requirements and

industry standards," *id.* ¶ 62, and violated that duty "by failing to transmit, execute, or settle

orders of Plaintiff and other class members in accordance with regulatory requirements and

industry standards," *id.* ¶ 63.  As with her parallel ERISA claim, Cummings alleges that "TIAA-

CREF" "benefit[ted] from its breach of the duty of care by retaining investment gains generated

by the accounts of Plaintiff and other class members after receiving requests to transfer of [sic]

distribute their funds, and using such gains to meet its legal obligations to other customers, as

well as to cover administrative expenses." *Id.* ¶ 65.

Count V, in which Cummings alleges "Common Law Breach of Fiduciary Duty of Loyalty," mimics her ERISA duty of loyalty claim in Count II.  Cummings asserts that "TIAA-CREF owed a fiduciary and contractual duty to act in the best interest of Plaintiff and other Class Members in handling their retirement accounts, including a duty not to use funds in such accounts for any purpose other than their benefit."  *Id.* ¶ 67.  She says that "TIAA-CREF" violated that duty because, rather than "pay Plaintiff or other Class Members investment gains generated by their accounts after receipt of their written transfer or withdrawal requests," TIAA-CREF "used such gains to meet its legal obligations to other customers and to cover administrative expenses."  *Id.* ¶ 69.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where, even if all of the allegations contained in a complaint are true, a claim fails as a matter of law."  *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).  ERISA preemption of state-law claims is a legal question properly resolved on a motion to dismiss.  *See Romney v. Lin*, 94 F.3d 74, 84 (2d Cir. 1996) (affirming district court's grant of motion to dismiss because plaintiff's state-law claim was preempted by ERISA); *Kolasinski v. Cigna Healthplan of Ct, Inc.*, 163 F.3d 148, 149 (2d Cir. 1998) (per curiam) (same).

## ARGUMENT

### I.    Counts IV and V Are Preempted By ERISA

Cummings's state-law claims mirror Walker's state-law claims.  *Compare Walker* ECF No. 1 ¶¶ 35-38 *with* SAC ¶¶ 60-69.  And, like his state-law claims, they should be dismissed because they are preempted by ERISA.  *See Walker* ECF Nos. 21, 34.

### A.    Standard For ERISA Preemption

ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. PBGC*, 446 U.S. 359, 361 (1980), designed to "provide a uniform regulatory regime over employee benefit plans," *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004).  To effectuate the policy goals embodied in ERISA, Congress adopted ERISA § 514(a), which, subject to exceptions inapplicable here, expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[5]  29 U.S.C. § 1144(a). Section 514(a) is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) (internal quotation marks omitted).

The Supreme Court and the Second Circuit have given effect to § 514(a)'s expansive terms and have held that a state-law claim is preempted by ERISA so long as it "has a connection with" an ERISA plan.  *Pilot Life*, 481 U.S. at 47 (internal quotation marks omitted); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) ("'A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with . . . such a plan.'" (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983))); *see Towne v. Nat'l Life of Vt., Inc.*, 130 F. Supp. 2d 604, 608 (D. Vt. 2000) ("The Supreme Court has construed the words 'relate to' in [ERISA § 514(a)] very broadly.").  A state-law claim has an impermissible connection with an ERISA plan, and is therefore preempted by ERISA § 514(a), if either (1) the claim purports to "control or supersede central ERISA functions," *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003); or (2) "[r]esolution of the claim would necessarily involve

---

[5]    "State laws" are defined broadly to include all "laws, decisions, rules, regulations, or other . . . action having the effect of law" of any "State, any political subdivisions thereof, or any agency or instrumentality of either . . . ."  29 U.S.C. § 1144(c).

interpreting the plan, its design, and ERISA," *Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 101 (2d Cir. 1999).

In addition, the Supreme Court has recognized that ERISA's detailed and "integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a)," provides "strong evidence" of Congressional intent not to authorize any remedies not expressly provided for therein. *Davila*, 542 U.S. at 208-09 (quotation omitted). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

**B.      Cummings's State-Law Claims "Relate To" The Plan Because They Seek To Control Or Supersede Central ERISA Functions**

Cummings's state-law claims unquestionably "relate to" the St. Michael's Plan because they seek to "control or supersede central ERISA functions" by mandating a particular manner of processing transfer requests and calculating amounts due under an ERISA-governed plan. That alone is enough to find them preempted. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657-59 (1995) (holding that state-law claims are preempted if they attempt to "bind plan administrators to any particular choice" or "mandate[] employee benefit structures or their administration," thereby "function[ing] as a regulation of an ERISA plan itself"); *Gerosa*, 329 F.3d at 324 ("[S]tate laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been

found to be preempted.").[6]  Cummings's state-law claims purport to directly regulate the

administration of an ERISA plan by suggesting that Defendants must process participants'

transactions within a particular period of time different than that set forth in the CREF Account

prospectus, and must pay the greater of the Effective-Date value of the participants' Units and

the value those Units would have had on the date the check is cut, "contrary to the prospectuses

(the guidelines of the ERISA-covered plan in question here), which state 'an investor is entitled

only to the value of his account on the effective date of the withdrawal or transfer.'"  *Walker*

ECF No. 34 at 7.  Thus, as this Court explained in *Walker*, "allowing the state law claims to go

forward will have a significant impact on the administration of the ERISA plan in question."  *Id.*

       The "basic thrust of [ERISA's] pre-emption clause" is "to avoid a multiplicity of

regulation in order to permit the nationally uniform administration of employee benefit plans."

*Travelers*, 514 U.S. at 657; *see Pilot Life*, 481 U.S. at 45-46.  Cummings's state-law claims, if

successful, would produce just the type of state-by-state variation in ERISA plan administration

that § 514(a) prohibits.  If Cummings prevailed on her state-law claims, Defendants would be

required in Vermont to pay the greater of (1) the value of the participants' Units on the Effective

Date of their transaction, or (2) the value their Units would have had on the date payment was

actually made.  By contrast, in every other state, Defendants would always be required to pay the

Effective-Date value of participants' Units, as the prospectuses provide.  *See Walker* ECF No.

404 at 17.  This is exactly the kind of "patchwork scheme of regulation" that ERISA preemption

prevents by ensuring that "benefit plans will be governed by only a single set of regulations."

---

[6]     *See also Kollman v. Hewitt Assocs., Inc*., 487 F.3d 139, 150 (3d Cir. 2007) (holding that
ERISA preempted state-law professional malpractice claim based on alleged miscalculation of
benefits because claim went "to the essence of the function of an ERISA plan—the calculation
and payment of the benefits due to a plan participant").

*FMC Corp. v. Holliday*, 498 U.S. 52, 60 (1990) (citations omitted); *Liberty Mut. Ins. Co. v.*

*Donegan*, 746 F.3d 497, 507 (2d Cir. 2014) ("[D]iffering state regulations affecting an ERISA

plan's system for processing claims and paying benefits impose precisely the burden that ERISA

pre-emption was intended to avoid." (quotation omitted) (alteration in original)).  For this reason

alone, "preemption is proper."  *Walker* ECF No. 34 at 7.

**C.      Resolution Of Cummings's State-Law Claims Necessarily Involves Interpretation Of The Plan And ERISA**

"Resolution of the claim[s] would necessarily involve interpreting the plan, its design,

and ERISA."  *Devlin*, 173 F.3d at 101.  That is, Cummings's state-law claims "do not arise

independently of ERISA or the plan terms."  *Davila*, 542 U.S. at 212.  As the Court found in

*Walker*, "the ERISA benefit plan is a 'critical element' of the state cause of action," and "it is the

very fiduciary relationship created by the ERISA plan in question which creates liability."

*Walker* ECF No. 34 at 6.  Here, too, Cummings's state-law claims are expressly premised on the

assertion that Defendants violated their "contractual and fiduciary dut[ies]," SAC ¶¶ 62, 63, 67,

69—a contention that cannot be adjudicated without assessing through the lens of ERISA the

Plan's fiduciary structure and the terms of the Plan's investment and service arrangements with

Defendants.  *See Paneccasio*, 532 F.3d at 114 (finding state-law claims preempted because each

claim was "premised on the termination of the 1991 Plan and resulting denial of benefits under

that Plan; each makes explicit reference to the Plan; and each would require reference to the Plan

in the calculation of any recovery"); *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274,

281 (1st Cir. 2000) (finding state-law claims preempted where "the trier of fact necessarily

would be required to consult the ERISA plan to resolve the plaintiff's claims").

### D.      Cummings's State-Law Claims Duplicate, Supplement, Or Supplant Her ERISA Claims

Cummings's state-law claims are preempted because, like Walker's, they "duplicate[], supplement[], or supplant[]" her ERISA cause of action.  *Davila*, 542 U.S. at 209; *see Walker* ECF No. 21 at 5-6.  Cummings relies on the same factual allegations to support both her ERISA and state-law claims.  She alleges that Defendants breached their "contractual and fiduciary duty of care" by "failing to transmit, execute, or settle orders of Plaintiff and other class members in accordance with regulatory requirements and industry standards," *see* SAC ¶ 63, and benefitted from that breach "by retaining investment gains generated by the accounts of Plaintiff and other class members after receiving requests to transfer or distribute their funds, and using such gains to meet its legal obligations to other customers, as well as to cover administrative expenses," *see id.* ¶ 65.  Cummings further asserts that Defendants breached a common-law fiduciary duty of loyalty because they "did not pay Plaintiff or other Class Members investment gains generated by their accounts after receipt of their written transfer or withdrawal requests," instead "us[ing] such gains to meet its legal obligations to other customers and to cover administrative expenses." *Id.* ¶ 69.

These state-law allegations are indistinguishable from those Cummings asserts under ERISA.  Cummings's ERISA claims allege that Defendants breached their fiduciary "duty of care" by "failing to transmit Plaintiff's sell order on the date it was received" and "failing to settle Plaintiff's account within three days."  *Id.* ¶¶ 43-44.  Cummings further alleges that Defendants benefitted from that breach "because they did not pay out investment gains generated on Plaintiff's account after May 1, 2007," and instead "used such gains to meet their own obligations to other customers and to cover administrative expenses." *Id.* ¶ 46.  And she asserts that Defendants violated ERISA's fiduciary duty of loyalty because, "[b]y investing and keeping

13

invested funds in Plaintiff's retirement accounts for purposes other than her benefit after

receiving her written transfer request, TIAA-CREF was not acting solely in the interest of

Plaintiff or for the exclusive purpose of providing benefits to Plaintiff or her retirement plan."

*Id.* ¶ 51.  As this Court explained in *Walker*, such duplicative pleadings cannot stand.  *See*

*Walker* ECF No. 21 at 5-6.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Counts IV and V should

be dismissed with prejudice as to all Defendants.

Dated:  November 14, 2014                          O'MELVENY & MYERS LLP

By: /s/ Shannon M. Barrett
Shannon M. Barrett (*pro hac vice)*
Theresa S. Gee (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Phone: (202) 383-5300
Fax:     (202) 383-5414
E-mail:  sbarrett@omm.com

---

[7]     To the extent that Cummings purports to assert Counts IV and V under federal common law rather than state law, those claims remain improper.  As the Supreme Court has emphasized, ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'"  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 136 (1985)).  Accordingly, courts should be "especially reluctant to tamper with [the] enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209 (2002) (quotation omitted)(alteration in original).  ERISA already has detailed fiduciary provisions and an express scheme for enforcing alleged violations.  There is no need nor basis to tamper with that carefully structured scheme by recognizing separate fiduciary duty claims under federal common law.  *See, e.g.*, *Provident Life & Accident Ins. Co. v. Cohen,* 423 F.3d 413, 424-25 (4th Cir. 2005) (rejecting unjust enrichment claim because "we find it particularly inappropriate to afford [plaintiff] a federal common law remedy where Congress purposefully chose to exclude such a remedy under the governing statute"); *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1018 (3rd Cir. 1997) ("Because Jordan brought a claim under § 502(a)(3), the district court correctly dismissed his federal common law 'unjust enrichment' claim because it was not needed to 'fill in interstices of ERISA.'").

By: /s/ Richard C. Carroll
Richard C. Carroll
POTTER STEWART, JR. LAW OFFICES P.C.
The Merchants Bank Building
205 Main Street, Suite 8
Brattleboro, VT 05301
Phone: (802) 257-7244
E-mail:  rcarroll@potterstewartlaw.com

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 14, 2014, I electronically filed the foregoing document

using the Court's CM/ECF system, which will send notification of such filing to all counsel of

record.

<u>/s/   Shannon M. Barrett</u>