# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT


| | |
|---|---|
| SARAH E. CUMMINGS, on behalf of herself and all others similarly situated, <br>                    Plaintiff <br><br>     v. <br><br> TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT AND EQUITIES FUND (TIAA-CREF), COLLEGE RETIREMENT AND EQUITIES FUND (CREF), TEACHERS' INSURANCE AND ANNUITY ASSOCIATION OF AMERICA (TIAA), TIAA-CREF INVESTMENT MANAGEMENT, LLC (TCIM), TEACHERS ADVISORS, INC. (TAI), and TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC, <br>                    Defendants | ) <br> ) <br> ) <br> ) <br> )     Docket No. 1:12-cv-93 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |


<u>THIRD AMENDED COMPLAINT</u>

<u>Nature of Action</u>

1.      This is a class action for equitable and legal relief, based on TIAA-CREF's breach

of the fiduciary duty of care and loyalty and its dealing with ERISA plan assets for its own

account.  Defendants failed to process customer requests to pay out funds in a timely fashion,

then kept the investment gains the funds earned during the delay.  Plaintiffs seek return of the

investment gains, together with prejudgment interest and attorney's fees.

gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

<u>Jurisdiction and Venue</u>

2.      Federal jurisdiction is available under 28 U.S.C. § 1331, because Plaintiff's

claims arise under the laws of the United States.

3.      Venue is proper in the District of Vermont under 28 U.S.C. § 1391(a)(1), since

one or more Defendants are corporations subject to personal jurisdiction in this state and

therefore residents for purposes of venue.  Venue is also proper under 28 U.S.C. § 1391(a)(2),

since a substantial part of the events giving rise to Plaintiff's claims occurred here.

<u>Parties</u>

4.      Plaintiff Sarah Cummings is an Associate Professor of English in the Applied

Linguistics Department at St. Michael's College.  She is a resident of South Burlington, Vermont.

Prof. Cummings was the account owner of a TIAA-CREF retirement account at St. Michael's

College prior to May 2007.  Amounts in Prof. Cummings account were plan assets of the St.

Michael's College Retirement Plan, a defined contribution plan under ERISA.

5.      Defendant TIAA-CREF is a group of closely-related and affiliated companies and

subsidiaries, including each of the Defendants in this action.  TIAA-CREF's main offices and

"nerve center" are located in New York, New York.  According to its website, TIAA-CREF has

more than $400 billion under management and holds more than 3.2 million individual accounts.

As used in this Complaint, the terms "TIAA-CREF," "Defendant," and "Defendant TIAA-

CREF" refer to each of the entities which comprise the TIAA-CREF group, including the

companies specifically named as Defendants.

6.      The entities which comprise TIAA-CREF share corporate governance.  In many

cases, they provide services to one another at cost and share employees.  Some TIAA-CREF

entities are run as non-profit or not-for-profit companies while others are run for profit, and some



gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

have no assets or insufficient assets to cover a judgment on behalf of the putative class.

Moreover, TIAA-CREF markets itself to the investing public as a single entity.  For all of these

reasons, TIAA-CREF should be considered a single entity to the extent necessary to achieve the

ends of justice.

7.     Defendant College Retirement and Equities Fund ("CREF") is a New York

membership corporation.  Defendant CREF offers at least eight fund choices to investors,

including a stock fund, global equities fund, growth fund, equity index fund, social choice fund,

bond market fund, inflation-linked bond fund, and money market fund ("CREF Funds").

Although CREF originated as a non-profit organization, the Internal Revenue Service revoked its

tax-exempt status under section 501(c)(3) in 1998.   On information and belief, CREF has no

assets or insufficient assets to cover a judgment.  Prof. Cummings had retirement funds invested

in CREF accounts.

8.     Defendant Teachers' Insurance and Annuity Association of America ("TIAA") is a

stock life insurance company domiciled in New York.   Defendant TIAA offers a real estate fund

to investors.  Although TIAA originated as a non-profit organization, the Internal Revenue

Service revoked its tax-exempt status under section 501(c)(3) in 1998.   On information and

belief, TIAA has no assets or insufficient assets to cover a judgment.  Prof. Cummings had a

portion of her retirement funds invested in TIAA's real estate fund.

9.     Defendant TIAA-CREF Investment Management, LLC ("TCIM"), a Delaware

limited liability company, and Defendant Teachers Advisors, Inc. ("TAI"), a Delaware business

corporation, provide investment advice and management services to CREF funds.  On

information and belief, TCIM and TAI are operated for profit and are the only TIAA-CREF

entities so operated.



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 3 -

10.     Defendant TIAA-CREF Individual & Institutional Services, LLC ("Services"), a Delaware limited liability company and a wholly-owned subsidiary of TIAA, functioned as the broker-dealer for the TIAA Real Estate and CREF funds at all relevant times.  Services also held the "gain" and "loss" accounts to which investment earnings or losses on customer funds used by TIAA-CREF after a redemption or transfer request is received are credited or charged.   On information and belief, Services performs its services at cost and has no assets or insufficient assets to cover a judgment on behalf of the putative class.

Facts

TIAA-CREF Processing Practices

11.     TIAA-CREF has a long history of delays in processing customer orders.  The Securities and Exchange Commission raised concerns about such delays as long ago as 1998 following an examination of TIAA-CREF's books and records.  The SEC warned TIAA-CREF that its processing system needed review and asked it to propose improvements.

12.     Despite the SEC's warning, ERISA plan participants and other TIAA-CREF customers continued to experience serious processing delays.  In 2005, TIAA-CREF's problems reached crisis proportions due to its decision to cut approximately 500 positions while at the same time switching computer software.

13.     Between the last quarter of 2005 and 2008, there were well in excess of one hundred thousand accounts that had delayed distribution issues.  One internal TIAA-CREF study showed that, between January 1 and June 15, 2007, the *average* delay was more than 40 days.

14.     TIAA-CREF's processing delays resulted from back-ups in its mail room, where orders are opened, scanned and reviewed to make sure they are complete (or "in good order") before being transmitted for posting and settlement.  In contrast to the 40-day average processing



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 4 -

delay cited above, the industry standard is to transmit the order for posting and settlement the day it comes in if received before 4:00 p.m. Eastern time, or the next day if received after 4:00 p.m.

15.     The industry standard for settling, or paying, an outgoing order is three days or less from the date it is received.  By contrast, TIAA-CREF's own internal analysis showed that, between October 2005 and October 2007, more than 80 percent of customer orders took more than three days to be settled.

16.     TIAA-CREF's own attorneys recognized that its "standards are not in line with generally practiced turnaround standards for price dependent transactions within the mutual fund industry.  The majority of mutual funds have established same day turnaround standards for price dependent activity."

17.     TIAA-CREF's processing problems were not only foreseeable, they were actually foreseen by an IBM study commissioned by TIAA-CREF.  Despite IBM's concerns, TIAA-CREF chose to put its own bottom line ahead of the interests of ERISA plan participants and others by proceeding with the staff cuts and software conversion.

18.     Processing delays result in customer losses for which TIAA-CREF is financially responsible.  During a rising market, delayed processing of an incoming order will mean it will cost more to purchase the same number of shares when the order is ultimately executed.  During a falling market, delayed processing of an outgoing order will mean that a customer's shares will not be worth as much on the day they are sold as on the date the order was placed.  In both instances, regulators require TIAA-CREF to make up the difference.  As TIAA-CREF's Rule 30(b)(6) witness acknowledged in his testimony in *Bauer-Ramazani v. TIAA-CREF*, No. 1:09-cv-



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 5 -

190-jgm (D.Vt), "the responsible party reimburses the fund for any negative impact caused by their [processing delay]."

19.    According to its own internal analysis, TIAA-CREF caused more than $564 million in customer losses by delaying the processing of buy/sell orders between 2003 and 2010. TIAA-CREF has acknowledged that it is financially responsible for making good such losses.

20.    The investment accounts of ERISA plan participants and other customers may also increase in value during processing delays.  During a rising market, delayed processing of an outgoing order will mean that a customer's shares are worth more on the date they are sold than they were on the date the order was placed.  During a falling market, delayed processing of an incoming order will mean that the same amount of money will purchase more shares than it would have on the date the order was placed.

21.    Although ERISA and basic principles of fiduciary duty prohibit a fiduciary from retaining any investment gain due to its own breach of the fiduciary duty of care, skill and diligence, TIAA-CREF did not pay plan participants or other customers who placed outgoing orders during rising markets the value of their accounts on the day the order was executed. Rather, it paid only the value of the accounts on the date the order was received or (as in Plaintiff's case) was deemed to have been received.  TIAA-CREF referred to the difference as "transaction fund earnings" or "TFE Gains."

22.    Similarly, in the event of a processing delay on an incoming order placed during a falling market, TIAA-CREF did not buy the full number of shares the customer's money could have purchased on the date the order was executed.  Rather, it purchased only the number of shares the customer's funds would have purchased if the order had been executed on the date it


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 6 -

was received (or was deemed to have been received) and retained the difference. TIAA-CREF also called this amount "TFE Gains."

23.     According to its own internal analysis, TIAA-CREF had "TFE Gains" of more than $567 million from 2003 to 2010. Rather than paying outgoing customers the TFE Gains the customer's funds generated or using them to buy shares on behalf of incoming customers, TIAA-CREF used TFE Gains to cover the customer losses it caused by delaying the processing of customer orders and for which it was financially responsible. To the extent any funds remained after such losses were covered, TIAA-CREF used them to cover expenses, including salaries.

St. Michael's College Plan

24.     The St. Michael's College ("College") retirement plan ("Plan") to which Plaintiff belongs is a defined contribution plan consisting of a Salary Deferral Arrangement under Section 403(b) of the Internal Revenue Code and a Money Purchase Plan under Section 401(a) of the Internal Revenue Code (since converted to a profit-sharing plan under Section 401(k) of the Internal Revenue Code). With respect to redemption requests, the Plan provides that "[t]he processing date of a transaction will be binding for all purposes of the Plan and considered the applicable Valuation Date for an investment transaction."

25.     Beginning in 1993, the College moved retirement assets of Plan participants, which had been invested with various mutual funds, insurance companies, and banks, to TIAA-CREF.

26.     In 2006, the College, as administrator of the Plan, concluded that the funds offered by TIAA-CREF were not performing satisfactorily and that the fees it charged were too high. It directed TIAA-CREF to transfer retirement accounts belonging to Plan participants to



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

Milliman USA, another mutual fund "platform" (*i.e.*, a company offering investments in various mutual funds).

27.    TIAA-CREF refused to do so, claiming that the College had no authority to direct it to transfer such accounts.  According to Defendants, all TIAA-CREF accounts held by participants in the Plan were based on individual contracts between TIAA-CREF and the participants themselves.

28.    Based on Defendant's position, the Plan was forced to obtain individual signatures on the multiple forms required by TIAA-CREF in order to transfer or withdraw accounts.

29.    Eventually, the Plan gathered and submitted to TIAA-CREF the required signatures to transfer the retirement accounts of approximately 755 College employees, with assets of more than $36 million, from TIAA-CREF to Milliman USA.

30.    Plaintiff's written transfer request, and those of almost all other St. Michael's College employees, was received by TIAA-CREF on Friday, April 27, 2007.  The date a customer's written request for a transfer or distribution is received by TIAA-CREF is referred to by TIAA-CREF as the "Effective Date."  Although TIAA-CREF received Plaintiff's transfer request on April 27, 2007, it deemed May 1, 2007 the "Effective Date" of her request and of all other St. Michael's College employee requests which it received on April 27, 2007.

31.    Prof. Cummings' order, as well as those of many other TIAA-CREF customers, was not transmitted for execution on the day it was received (or the next day, if received after 4:00 p.m. Eastern time).   It also was not settled in T+3.  The check was not cut until May 7, 2007.

32.    Prof. Cummings' retirement money remained invested at TIAA-CREF after the Effective Date.  The value of her retirement account increased by more than $1,000 between


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

May 1, 2007 and May 7, 2007, when the check was cut.   In total, the retirement accounts of all

St. Mike's Plan participants increased in value by more than $200,000 between the Effective

Date and the date checks were cut.

33.     The check which TIAA-CREF cut for Prof. Cummings reflected the value of her

account only as of May 1, 2007.  The check did not reflect any of the gains which Prof.

Cummings' retirement account experienced between May 1 and May 7, 2007.

34.     Consistent with its policy and practice, TIAA-CREF deposited the TFE Gains

generated by Plaintiff's retirement account in its own "TFE Gain Account."  The "TFE Gain

Account" is held by Defendant TIAA-CREF Individual & Institutional Services, LLC.

35.     Neither Plaintiff nor any members of the putative class in this case have received

any portion of the TFE Gains their funds generated after TIAA-CREF received their distribution

or transfer requests.  Nor have they received the amount they could have earned in an alternative

investment during the delay period.

<u>Class Action Allegations</u>

36.     Plaintiff brings this action on behalf of herself and as a class action under Federal

Rule of Civil Procedure 23(a) and 23(b)(1) and (b)(3) on behalf of all members of the following

Class:

> All persons, including all "persons" as defined by 29 U.S.C.
> § 1002(9), who at any time during the Class Period requested a
> transfer or distribution of funds held in a TIAA or CREF variable
> annuity account:  (i) whose request was not transmitted or settled
> in accordance with the time limits established by the Securities &
> Exchange Commission and industry practice; and (ii) whose funds
> generated investment gains during the period of delay; but (iii)
> excluding members of the class in *Rink v. CREF,* No. 07-CI-10761
> (Ky. Cir.) and members of the class whose claims herein were
> entirely released in *Bauer-Ramazani v. TIAA-CREF,* No. 1:09-CV-
> 190 (D. Vt.).


gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 9 -

37.     Under section 413(2) of ERISA, 29 U.S.C. § 1113(2), the Class Period begins on the date TIAA-CREF initiated the practices complained of in this action, since TIAA-CREF concealed such practices from class members.  In the event no fraud or concealment is found, the Class Period begins six years before the action originally captioned *Walker v. TIAA-CREF*, 1:09-cv-190 (D. Vt. filed August 17, 2009) was filed.  (*Walker* was recaptioned *Bauer-Ramazani v. TIAA-CREF* after the Court ordered the lead plaintiff, Christine Bauer-Ramazani, to file a Third Amended Complaint without Walker's claims on May 25, 2012.)

38.     Plaintiff does not know the exact number of Class Members, because such information is in the exclusive control of the Defendants.  Based on the information provided by Defendants to date, Plaintiff believes there are more than 20,000 members of the Class.   The exact number of class members and their identities is known or may be ascertained by Defendants.

39.     The Class is so numerous that joinder of all Members is impracticable.

40.     There are questions of law and fact common to the Class, including:

a.     Whether TIAA-CREF has or had a practice of retaining and investing customer funds for purposes other than the customer's benefit, after receiving a request for withdrawal or transfer;

b.     When TIAA-CREF's practice began and what its exact nature was;

c.     Whether TIAA-CREF failed to execute and settle customer sell orders in accordance with industry standards;

d.     Whether TIAA-CREF's actions violated the fiduciary duty and prohibited transaction provisions of ERISA;


gravel &
shea    ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

e.    Whether TIAA-CREF concealed its practices from Plaintiff and other

Class Members, thereby extending the statute of limitations under ERISA;

f.    Whether TIAA-CREF is liable to Plaintiff and other Class Members for

compensatory damages and, if so, in what amount;

g.    Whether TIAA-CREF is liable to Plaintiff and other Class Members for

disgorgement or other equitable remedies and, if so, in what amount; and

h.    Whether TIAA-CREF is liable to Plaintiff and other Class Members for

reasonable attorney's fees.

41.    Plaintiff is a member of the Class.  Her claims are typical of the claims of the

Class Members, and Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff closed her TIAA-CREF accounts, and the value of her accounts on the date of transfer

was greater than the amount TIAA-CREF transferred on her behalf.  Her interests are coincident

with, and not antagonistic to, those of the other members of the Class.

42.    Plaintiff is represented by counsel who is competent and experienced in handling

ERISA and class action litigation.

43.    The prosecution of separate actions by individual members of the Class would

create a risk of inconsistent or varying adjudications, establishing incompatible standards of

conduct for Defendant.

44.    The prosecution of separate actions by individual members of the Class would

create a risk that adjudications with respect to individual members would, as a practical matter,

be dispositive of the interests of the other members not parties to the individual adjudications, or

would substantially impair or impede their ability to protect their interests.



gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 11 -

45.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and remedies.

46.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist. Prosecution of class member claims as a class action will eliminate the possibility of repetitious litigation.  Treatment of the controversy as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. This class action presents no difficulties in management that would preclude maintenance as a class action.

## COUNT I
### ERISA Breach of Fiduciary Duty of Care, Skill and Diligence

47.    Plaintiff incorporates paragraphs 1-46 as if fully set forth here.

48.    By investing or keeping invested funds in Plaintiff's retirement account after receiving her written transfer request, TIAA-CREF exercised authority or control respecting the management or disposition of such accounts and must be deemed a fiduciary under section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

49.    An ERISA fiduciary is obligated to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" under section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 12 -

50.     Defendant Services, the TIAA-CREF entity responsible for processing customer orders, is a registered broker-dealer under the Securities Exchange Act and a member of the Financial Industry Regulatory Authority ("FINRA").

51.     If a fiduciary performs services as a practitioner of a trade or profession, it must perform in accordance with industry standards in the exercise of its duty of care.

52.     As a registered broker-dealer and FINRA member, Defendant Services is subject to administrative regulation and the rules of its profession. Although a fiduciary's violation of such rules does not in itself establish a breach, the finder of fact may consider such a violation in evaluating the fiduciary's conduct.

53.     TIAA-CREF promoted itself as providing "same day transaction processing." If a fiduciary claims to possess special skills, it has a duty to act with the care, skill, and diligence normally exercised by a fiduciary with such skills.

54.     By failing to transmit Plaintiff's sell order on the date it was received, Defendant Services did not act in accordance with industry practice or regulatory requirements, thereby breaching its duty of skill, care and diligence.

55.     By failing to settle Plaintiff's account within three days, TIAA-CREF did not act in accordance with industry practice or regulatory requirements, thereby breaching its duty of care, skill and diligence.

56.     A fiduciary may not retain any profits arising from its own breach of fiduciary duty.

57.     TIAA-CREF and Services did retain investment gains arising from Service's delayed processing of Plaintiff's order. Defendants benefited from such gains by using them to


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

cover losses Defendants caused by breaching their duties to other customers and to cover administrative expenses.

58.     TIAA-CREF is liable for any investment gains made through the use of Plaintiff's funds and those of other class members under sections 409, 502(a)(2) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1109(a); 1132(a)(2); and 1132(a)(3).

59.     TIAA-CREF is also liable for the reasonable costs and attorney's fees of this action under Section 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), as well as prejudgment interest.

COUNT II

ERISA Breach of Fiduciary Duty of Loyalty

60.     Plaintiff incorporates paragraphs 1-59 as if fully set forth here.

61.     An ERISA fiduciary is obligated to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries" under section 404(a) of ERISA, 29 U.S.C. § 1104(a).

62.     By investing or keeping invested funds in Plaintiff's retirement accounts for purposes other than her benefit after receiving her written transfer request, TIAA-CREF was not acting solely in the interest of Plaintiff or for the exclusive purpose of providing benefits to Plaintiff or her retirement plan, as ERISA requires.

63.     TIAA-CREF is liable for any investment gains made through the use of Plaintiff's funds and those of other class members, under sections 409, 502(a)(2) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1109(a); 1132(a)(2); 1132(a)(3).

64.     TIAA-CREF is also liable for the reasonable costs and attorney's fees of this action under Section 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), as well as prejudgment interest.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 14 -

COUNT III
ERISA Prohibited Transactions

65.     Plaintiff incorporates paragraphs 1-64 as if fully set forth here.

66.     Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from

"deal[ing] with the assets of the plan in his own interest or for his own account."  Such dealing is

barred categorically and is a *per se* violation of ERISA.

67.     All amounts in the retirement account of Plaintiff and other members of the Class

were "assets of the plan" within the meaning of section 401(a)(1)(D).

68.     TIAA-CREF kept the funds in Plaintiff's retirement account invested after the

date it received her written transfer request.  It deposited investment gains earned by Plaintiff's

funds after such date in its own "TFE Gain account."  TIAA-CREF used such investment gains

to meet its own liabilities for losses it caused by failing to process other customer orders in a

timely fashion.  It used any remaining amounts to cover its own administrative expenses,

including salaries.  The use of Plaintiff's funds for such purposes violates section 406(b)(1) of

ERISA, 29 U.S.C. § 1106(b)(1).

69.     TIAA-CREF is liable to Plaintiff  and other members of the Class under section

502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), for disgorgement of all amounts which it earned on

their accounts following a request for withdrawal or transfer, as well as other appropriate

equitable relief.

70.     TIAA-CREF is also liable for the reasonable costs and attorney's fees of this

action under Section 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), as well as prejudgment interest.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

<u>Relief</u>

On behalf of themselves and all others similarly situated, Plaintiff requests the following relief:

a.    Appropriate equitable relief, including disgorgement and trustee surcharge, for TIAA-CREF's breach of its fiduciary duties under sections 502(a)(2) and 502(a)(3) of ERISA;

b.    Appropriate equitable relief, including disgorgement of investment profits and trustee surcharge under section 502(a)(3) of ERISA, for engaging in prohibited transactions involving plan assets under section 406(a) of ERISA; and

c.    Reasonable attorney's fees and the costs of this action, as authorized by ERISA.

gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 16 -

## <u>JURY DEMAND</u>

**Plaintiff demands a trial by jury on all issues so triable.**

Dated:      Burlington, Vermont
               August 24, 2015

 

Norman Williams, Esq.
Robert B. Hemley, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
nwilliams@gravelshea.com
rhemley@gravelshea.com
      and
Thomas A. Tucker Ronzetti, Esq.
Kenneth Hartmann, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL  33134
tr@kttlaw.com
krh@kttlaw.com
For Plaintiff

<1037029v1/NCW>



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION