UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | | |
|---|---|---|
| SARAH E. CUMMINGS, on behalf of<br>herself and all others similarly situated,<br>Plaintiff | ) ) ) | |
| | ) | |
| v. | ) | Docket No. 1:12-cv-93 |
| | ) | |
| TEACHERS INSURANCE AND ANNUITY<br>ASSOCIATION OF AMERICA – COLLEGE<br>RETIREMENT AND EQUITIES FUND<br>(TIAA-CREF), COLLEGE RETIREMENT<br>AND EQUITIES FUND (CREF), TEACHERS'<br>INSURANCE AND ANNUITY ASSOCIATION<br>OF AMERICA (TIAA), TIAA-CREF<br>INVESTMENT MANAGEMENT, LLC (TCIM),<br>TEACHERS ADVISORS, INC. (TAI), and<br>TIAA-CREF INDIVIDUAL & INSTITUTIONAL<br>SERVICES, LLC,<br>Defendants | ) ) ) ) ) ) ) ) ) ) ) ) | |

PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Preliminary Statement

Plaintiff alleges that Defendants ("TIAA-CREF") failed to meet industry standards in

processing her redemption request and many thousands of others, and that it retained investment

gains her funds earned during the delay.  TIAA-CREF deposited those gains for its own account,

then used them to cover losses it caused by delayed processing of other customer orders.  TIAA-

CREF has acknowledged that it is financially responsible to make good such losses.

These allegations state a cause of action for breach of fiduciary duty and a prohibited

transaction under ERISA.  As the Complaint states, Section 404(a)(1)(B) of ERISA imposes a

gravel &
shea
ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

duty of care which requires fiduciaries to process customer buy/sell orders in accordance with industry standards.  TIAA-CREF does not quarrel with that, nor does it deny that it failed to meet such standards.  Section 404(a)(1)(A) also imposes a duty of loyalty, which requires fiduciaries to put the interests of plan participants ahead of their own.  The Second Circuit has held that, when a distribution of plan assets is delayed, the duty of loyalty requires a fiduciary to pay out investment gains earned on such assets during the delay to the participants whose funds earned them.  TIAA-CREF also does not deny that it failed to do so.

TIAA-CREF nonetheless asserts that it is entitled to judgment on the pleadings on both Plaintiff's breach of care and breach of loyalty claims.  With regard to the duty of care, it argues that, even if it did violate SEC processing requirements, SEC rules and regulations do not provide a cause of action.  That argument misses the point.  ERISA codifies the common law, which in turn looks to whether the fiduciary's performance met industry standards.  TIAA-CREF's processing did not meet such standards, as their own attorney informed them.  At common law, the violation of governing rules and regulations is a factor to be considered in evaluating a claim for breach of the fiduciary duty of care, but it is not determinative – just as speeding is a factor but not determinative in a motor vehicle negligence claim.  Certainly, TIAA-CREF cannot immunize itself from duty of care claims by violating SEC rules.

TIAA-CREF makes a different argument with respect to Plaintiff's breach of loyalty and prohibited transaction claims.  It contends that, because its prospectus states that it will pay the "Effective Date" price[1] regardless of processing delays, that is all it is bound to do.  The argument is foreclosed by the Supreme Court's decision last year in *Fifth Third Bancorp. v.*

---

[1] TIAA-CREF's prospectus defines the "Effective Date" as the date it receives the customer's redemption request and the paper work needed to process it.


gravel &
shea    ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 2 -

*Dudenhoffer*, 134 S.Ct. 2459 (2014).  *Dudenhoffer* does not allow ERISA fiduciaries to establish different rules for themselves than those established by the ERISA statute.  The ERISA statute requires a fiduciary meet industry standards in processing redemption orders and to distribute any investment gains attributable to a delay to plan participants.  Under *Dudenhoffer*, that is what TIAA-CREF must do.

Turning to the prohibited transaction claim, section 406(b)(1) of ERISA forbids a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  Such dealing is barred categorically and is a per se violation of ERISA.  TIAA-CREF does not deny that it deposited investment gains attributable to processing delays for its own account and that it used such gains to cover losses for which it was responsible.  Nonetheless, TIAA-CREF asserts that Plaintiff's prohibited transaction claim cannot survive because it did not put its own interests ahead of the St. Michael's College plan.  That argument can scarcely be credited, particularly on a motion for judgment on the pleadings.

TIAA-CREF squarely put its own interests ahead of the St. Michael's College plan.  By failing to meet industry standards for transaction processing, TIAA-CREF created losses that otherwise would not have existed.  ERISA and federal regulators obligate TIAA-CREF to cover these losses.  Instead, TIAA-CREF dealt with plan assets in its own interest, using gains belonging to other plan participants to cover the losses it had created.  Indeed, TIAA-CREF did not pay St. Mike's plan participants more than $200,000 which accrued on the funds during TIAA-CREF's processing delays.  TIAA-CREF's self-serving characterization of its conduct as "neutral transaction processing practices" "followed by a faithful fiduciary" is impossible to reconcile with the economic reality of what TIAA-CREF did:  cause losses it could have

gravel &
shea | ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

prevented and cover those losses using plan assets.  Plaintiff's claim should not be dismissed.

Rather, she should be permitted to offer evidence to prove it.

Finally, TIAA-CREF seeks to dismiss two defendants, TIAA-CREF Investment

Management, LLC ("TCIM") and Teachers Advisors, Inc. ("TAI"), if its motion for judgment on

Plaintiff's ERISA claims is denied.  TIAA-CREF argues that Plaintiff has not alleged that these

entities had anything to do with its processing delays.  Plaintiff has alleged, however, that TIAA-

CREF should be considered a single entity for the purposes of this case, since its various

subsidiaries and related entities:  (i) share corporate governance; (ii) provide services to one

another at cost as independent companies would not; (iii) share employees; (iv) market

themselves to the public as a single entity; and (v) have so arranged their affairs that the

responsible entities do not have assets sufficient to cover a class-wide judgment in this case.  The

Second Circuit has emphasized that courts have "without difficulty" pierced the corporate veil

"where ERISA's effectiveness would otherwise be undermined."  *Lowen v. Tower Asset Mgmt.*,

829 F.2d 1209, 1220 (2d Cir. 1987).  Until discovery is provided on Plaintiff's allegations, TCIM

and TAI should not be dismissed.


<u>Argument</u>

I.     PLAINTIFF'S ALLEGATIONS MAKE OUT A CLAIM FOR BREACH OF THE
       FIDUCIARY DUTY OF CARE UNDER SECTION 404(a)(1)(B) OF ERISA.

       A.     <u>A Broker-Dealer Which Fails To Meet Industry Standards For Processing
              Buy/Sell Orders Violates The Fiduciary Duty Of Care.</u>

       As Plaintiff alleges, for a period of years TIAA-CREF consistently failed to meet

industry standards and regulatory requirements for processing customer buy/sell orders.  *See*



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

Third Am. Compl. ¶¶ 11-17; Sec. Am. Compl. ¶¶ 20, 25.[2]  Although such standards require orders to be transmitted for processing the day they are received (or the following day if received after 4:00 p.m. ET) and settled[3] within three days, as much as 80 percent of TIAA-CREF's orders did not meet this standard at various times during the Class Period  Third Am. Compl. ¶ 15.[4]  TIAA-CREF's own lawyers warned that its processing "standards are not in line with generally practiced turnaround standards for price dependent transactions within the mutual fund industry."  *Id.*, ¶ 16.  As they said, "The majority of mutual funds have established same day turnaround standards for price dependent transactions within the mutual fund industry."  *Id.*[5]

In the instant case, TIAA-CREF deemed May 1, 2007, to be the Effective Date for Prof. Cummings and other St. Michael's College plan participants.  *See* Third. Am. Compl. ¶ 30; Sec. Am. Compl. ¶ 17.[6]  It did not transmit Plaintiff's order for processing until May 4, however, and it did not send a check until May 7.  Third. Am. Compl. ¶ 31; Sec. Am. Compl. ¶ 20.  Although Plaintiff's account increased in value by more than $1,000 between May 1 and May 7, TIAA-

---

[2] Because Plaintiff's Motion for Leave to File the Third Amended Complaint has not yet been granted, this Memorandum cites both the Second and Third Amended Complaints where the allegation appears in both.

[3] "Settlement" means the "actual exchange of securities and payment."  6 Louis Loss and Joel Seligman, *Securities Regulation* 2924 (rev. 3d ed. 2002).

[4] The Class Period covers at least the period from August 17, 2003 to date.  *See* Third Am. Compl. ¶ 37; Sec. Am. Compl. ¶ 28.

[5] Moreover, TIAA-CREF's own promotional materials tout "same day transaction processing."  *See* Third Am. Compl. ¶ 53; Sec. Am. Compl. ¶ 42.  "If an agent claims to possess special skills or knowledge, the agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents with such skills or knowledge."  *See* Restatement (Third) of Agency § 8.08 (2006).

[6] TIAA-CREF actually received Plaintiff's redemption order on April 27, 2007, however, together with almost all of the other orders from St. Mike's.  *See* Third Am. Compl. ¶ 30; Sec. Am. Compl. ¶ 17.



gravel &
shea   ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 5 -

CREF's check reflected only the May 1 value of Plaintiff's account.  Third. Am. Compl. ¶¶ 32-33; Sec. Am. Compl. ¶¶ 21-22.   TIAA-CREF used the investment gains to cover customer losses it caused by delaying the processing of other customer orders.  Third. Am. Compl. ¶¶ 18-23; Sec. Am. Compl. ¶¶ 23-25.   Any remaining amounts were used to pay administrative expenses, including salaries.  *Id.*

Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), requires a fiduciary to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  This language echoes section 77 of the Restatement (Third) of Trusts, as well as section 8.08 of the Restatement (Third) of Agency.  The Supreme Court has made clear that, in interpreting ERISA fiduciary requirements, courts "are to apply common law trust standards 'bearing in mind the special nature and purpose of employee benefit plans.'"  *Varity Corp. v Howe*, 516 U.S. 489, 506 (1996) (quoting legislative history).[7]

---

[7] This Court previously recognized that TIAA-CREF acted as a fiduciary under section 3(21) of ERISA, 29 U.S.C. § 1002(21), in handling redemption orders, because it had "actual control" of plan assets between the time the redemption order was received and the time the check was cut.  *See Bauer-Ramazani v. TIAA-CREF*, No. 1:09-cv-190, slip op. at 9, 11-12 (D. Vt. Nov. 27, 2013) (memorandum and order on summary judgment).  This Court relied on *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987), which similarly held that a partnership which delayed the distribution of retirement funds to a plan participant was an ERISA fiduciary on that basis.  This Court's ruling is also consistent with common law, which imposes fiduciary duties on brokers in their handling of buy/sell orders.  *See Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 510 (2d Cir. 1994) ("relationship between a stockbroker and its customer is that of principal and agent and is fiduciary in nature"); *DeKwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002) ("on a transaction-by-transaction basis, the broker owes duties of diligence and competence in executing the client's trade orders"); *O'Malley v. Boris*, 742 A.2d 845, 849 (Del. 1999) (broker "has a duty to carry out the customer's instructions promptly and accurately"); *cf.* Mary F. Radford, George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 1010 at 481-83 (3d ed. rev. 2010) (trustee has absolute duty to make distributions at proper time).

(…continued)



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

The common law requires a fiduciary "who undertakes to perform services as a practitioner of a trade or profession to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities unless the agent represents that the agent possesses greater or lesser skill."  Restatement (Third) of Agency § 8.08 cmt. c; *see also Fustock v. Conticommodity Servs., Inc.*, 618 F.Supp. 1082, 1086 (S.D.N.Y. 1985) (plaintiff's allegations that broker violated industry norms in purchasing silver contracts without adequate margin stated a common law cause of action for breach of fiduciary duty of care).  Moreover, an agent is expected "to know at least the basic rules and practices under which the agent's industry or profession operates."  Restatement § 8.08, cmt. c.  Since Plaintiff alleges that TIAA-CREF failed to meet industry standards – as well as its own claim of "same day processing" – by not transmitting her order for processing the day it was received and by not settling the trade within three days, she has stated a claim for breach of the fiduciary duty of care.  *See* Third Am. Compl. ¶¶ 48-55; Sec. Am. Compl. ¶¶ 40-44.[8]

---

TIAA-CREF maintains, however, that it was not an ERISA fiduciary, citing administrative guidance to the effect that persons who have no power to make decisions as to practices and procedures are not fiduciaries.  *See* Defs.' Mot. at 18, n. 29.  TIAA-CREF, however, did have the power to make decisions as to its own claims processing practices and procedures.  Indeed, it made the following decisions:  (i) to cut staff and switch computer programs which it was warned would result in processing delays; (ii) to leave accounts fully invested during such delays; and (iii) to use any investment gains earned during such delays to pay obligations for which it was liable.  *See* Third Am. Compl. ¶¶ 12, 17, 21; Sec. Am. Compl. ¶¶ 21, 22, 25.  Moreover, as discussed above, the Second Circuit has held that persons who delay a distribution of plan assets are fiduciaries on that basis.  *See Blatt, supra.*

[8] TIAA-CREF incorrectly suggests that this Court previously rejected Plaintiff's duty of care claim.  *Cf.* Defs.' Mot. at 2 ("this Court has previously rejected identical claims brought by Norman Walker and Christine Bauer-Ramazani") and 9 ("claims are stretched out, dressed up versions of claims that this Court dismissed in *Walker* and *Bauer-Ramazani*").

In fact, the duty of care claim was neither decided nor addressed by the Court in the prior case.  Plaintiffs discussed TIAA-CREF's failure to meet industry standards in their Opposition to

(…continued)


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

B.     <u>TIAA-CREF's Argument That Plaintiff's Duty Of Care Claim Is Foreclosed Must Be Rejected.</u>

TIAA-CREF does not quarrel with this legal analysis.  Rather, it asserts that Plaintiff's claim for breach of the duty of care is barred because there is no private cause of action for violations of SEC broker-dealer regulations.  *See* Defs. Mot. at 6-7, 10-14.  TIAA-CREF's argument is akin to saying there can be no cause of action for negligence against the driver of a speeding car for injuries sustained in a car crash, because no private cause of action exists against a motorist for speeding.  The point TIAA-CREF misses is that speeding is one factor to be considered in evaluating a negligence claim, just as the violation of government regulations is a factor in an action for breach of fiduciary duty.  *See* 1 Dan B. Dobbs, *et al.*, *The Law of Torts* § 146 (2011).[9]

The cases cited by TIAA-CREF do not support its position.  The decision on which it chiefly relies, *Clark v. Feder Semo & Bard, P.C.*, 739 F.3d 28 (D.C. Cir. 2014), actually involved two claims:  one for violation of section 401(a)(4) of the Internal Revenue Code, 26 U.S.C. § 401(a)(4),[10] and the other for breach of fiduciary duty under section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).  The district court dismissed the claim for violation of the tax

---

Summary Judgment dated July 25, 2013, ECF No. 367.  In response, TIAA-CREF argued that a duty of care claim was "completely absent from the complaint" and "should be rejected on that ground alone."  Defs.' Reply dated Aug. 12, 2013, ECF 376, at 10.  In its ruling, this Court did not discuss the duty of care.  *See Walker v. TIAA-CREF*, No. 1:09-cv-190 (D. Vt. Nov. 27, 2013).

[9] *Compliance* with certain federal laws may preempt a state law claim.  *See* Dobbs, § 250.  TIAA-CREF is not making a preemption argument, however.

[10] Section 401(a)(4) of the tax code provides that "retirement plans may lose their tax-favored status if [they] . . . discriminate in favor of highly compensated employees."  *Clark*, 738 F.3d at 29.



- 8 -

code, and the D.C. Circuit affirmed.[11]  However, it allowed the claim under section 404(a)(1)(B) of ERISA to proceed to trial.  After a six-day bench trial, the district court held that the plan fiduciaries had justifiably relied on the advice of counsel in calculating plan distributions and entered judgment against the plaintiff.  *Clark*, 738 F.3d at 31.  The D.C. Circuit affirmed, based on a deferential standard of review.  *Id.* at 32-33.  There was no suggestion that plaintiff's section 404(a)(1)(B) ERISA clam did not state a cause of action.

*Clark* is completely consistent with Plaintiff's claim here.  It does not hold that a claim for breach of fiduciary duty under section 404 of ERISA is not available simply because it may implicate other federal law.  Such a result would overturn firmly rooted principles of common law – which Congress intended to *incorporate* in section 404 of ERISA.  As the Supreme Court has warned, "a reading of ERISA [which] . . . would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted" must be rejected.  *Firestone,* 489 U.S. at 114 (1989).[12]

---

[11] As the Circuit Court pointed out, "It may well be that the distribution to Feder [the law firm founder] was discriminatory, but Clark doesn't seek to disqualify the plan."  *Id.* at 29.  Clark argued that her tax code claim was expressly authorized by 29 U.S.C. § 1344, which allows the Secretary of the Treasury to intervene when ERISA plans are terminated to make sure distributions are not discriminatory, but the court rejected the argument.  In the instant case, of course, Plaintiff does not rely on 29 U.S.C. § 1344.

[12] TIAA-CREF also cites *Reklau v. Merchants Nat'l Corp.,* 808 F.2d 628 (7th Cir. 1986), and *Useden v. Acker*, 734 F.Supp. 978 (S.D. Fla. 1989).  *See* Defs.' Mot. at 13-14.  Neither is on point.  No breach of fiduciary duty claim was asserted in *Reklau*, so the court had no occasion to consider whether one was allowed.  Rather, the plaintiff bank employee there sued under 29 U.S.C. § 1202(c) of ERISA for alleged violations of section 401 of the Internal Revenue Code.  *See id.*, 808 F.2d at 630-31.  As the court explained, "Title 29, § 1202(c) makes applicable to ERISA treasury regulations prescribed under 26 U.S.C. §§ 410(a), 411 and 412, none of which the plaintiff alleges the defendant violated in this case."  *Id.*  The court was "convinced that had Congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as it did in 29 U.S.C. § 1202(c) with §§ 410(a), 411 and 412 of the I.R.C."  *Id.*

(…continued)


gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

II.   PLAINTIFF HAS ALSO STATED CAUSES OF ACTION FOR BREACH OF THE
      FIDUCIARY DUTY OF LOYALTY AND A PROHIBITED TRANSACTION UNDER
      ERISA.

    A.   <u>The Duty Of Loyalty Obligates A Fiduciary To Turn Over Investment Gains
           Earned During Distribution Delays To The Plan Participant.</u>

As Plaintiff alleges, TIAA-CREF compounded its failure to process orders promptly by refusing to pay customers the amount by which their shares appreciated during the processing delay.  It is fundamental that, if a gain is obtained by virtue of a processing delay, the fiduciary must deliver the gain to the customer.  *See* Restatement of Agency (Third) § 8.01 cmt. d; *see also* § 8.02 cmt. e.

The point is illustrated by *John Blair Commc'ns Profit Sharing Plan v. Telemundo Group,* 26 F.3d 360 (2d Cir. 1994).  There, one company acquired another and split the acquired company's retirement plan (called the "Old Blair Plan") into two parts, called the "New Blair Plan" and the "Telemundo Plan."  *Id.* at 362.  The Telemundo Plan committee acted as interim trustee of Old Blair Plan assets destined for the New Blair Plan until such assets were actually transferred.  Under the Asset Purchase Agreement, such assets were to be transferred promptly

---

In contrast to 29 U.S.C. § 1202(c), section 404 ERISA does incorporate the common law. *See Varity Corp.*, 516 U.S. at 506.  The fiduciary duty of care, skill and diligence at common law looks to industry standards, which turn in part on regulatory requirements.  Thus it is perfectly appropriate to consider SEC broker-dealer rules, among other things, as one factor in evaluating Plaintiff's claim.

*Useden v. Acker* did involve a claim for a breach of fiduciary duty, but the court held that the defendant bank in that case was not a fiduciary.  *See id.*, 734 F.Supp. at 979.  Accordingly, it ruled that "Sun Bank cannot be liable for a violation of 29 U.S.C. § 1112 by 'handling trust property without being bonded.'"  Here, TIAA-CREF is a fiduciary under section 3(21)(a) of ERISA, 29 U.S.C. § 1002(21)(A), because it exercised authority or control over Plaintiff's account funds after receiving Plaintiff's redemption order.



76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 10 -

after the June 30, 1988 valuation date for the Old Blair Plan.  *Id.* at 363.  The Telemundo Plan

committee did not do so, however.  Rather, it transferred the assets to the New Blair Plan in

installments in October, November and December 1988.  In the interim, the assets appreciated by

about $500,000.  *See id.* at 364.  However, "[n]one of the transfers [to the New Blair Plan]

included interest or appreciation of the assets between the valuation date and the actual transfer

dates."  *Id.*  Rather, such gains were kept by the Telemundo Plan.

The Second Circuit held that the Telemundo Plan committee's failure to transfer the

investment gains "constituted a violation of its fiduciary duties under § 404 of ERISA, 29 U.S.C.

§ 1104."  *John Blair*, 26 F.3d at 367.[13]  As a dual fiduciary for both the New Blair and

Telemundo Plans, the Court said, "it owed obligations of loyalty to the members of both plans."

*Id.*  According to the Court, "Telemundo's duty of loyalty to its own plan members did not

extend to giving them a windfall at the expense of the New Blair Plan participants.  Its conduct

was inconsistent with the strict duty owed to the New Blair participants."  *Id.*  Similarly, TIAA-

CREF's failure to deliver the investment gains which accrued on Plaintiff's account during the

processing delay violated its fiduciary duty.

B.      <u>By Depositing Investment Gains For Its Own Account And Using Them To Cover Its Own Liabilities, TIAA-CREF Engaged In A Prohibited Transaction Under ERISA.</u>

The fact that TIAA-CREF deposited the investment gains for its own account and used

them to cover its own liabilities also constitutes a prohibited transaction under section 406(b)(1)

of ERISA, 29 U.S.C. § 1106(b)(1).  *See* Third Am. Compl. ¶¶ 55-57; Second Am. Compl. ¶¶ 66-

68.  That section prohibits a fiduciary from "deal[ing] with the assets of the plan in his own

interest or for his own account."  Section 1106 creates "a categorical bar" to such transactions.

_____

[13] The Court also ruled that Telemundo had violated § 208 of ERISA, 29 U.S.C. § 1058,
which regulates the spinoff of benefit plans.  *See id.* at 364-67.


gravel &
shea     ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

*Reich v. Compton*, 57 F.3d 270, 275 (3d Cir. 1995).  Section 406(b)(1) is to be "broadly

construed," and it imposes liability "even when there is no taint of scandal, no hint of self-

dealing, no trace of bad faith."  *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir.

1987) (internal quotation omitted).

C.     TIAA-CREF May Not Avoid Strict Adherence To Its Obligations Under ERISA
By Issuing A Prospectus Which Sets Forth Lesser Standards.

1.     The Supreme Court Has Made Clear That The ERISA Statute Alone Is The
Controlling Authority With Respect To Fiduciary Obligations.

TIAA-CREF does not dispute that it failed to process trades in accordance with industry

standards and that it did not pay account holders gains which accrued during processing delays.

It nonetheless attempts to justify this conduct by pointing to its prospectus, which states that it

may take up to seven days to process a redemption or transfer request, and that it will pay only

the value of the amount on the day the request is received.  Defs.' Mot. at 15-18.[14]  The Supreme

Court and other courts have repeatedly made clear, however, that a fiduciary may not relax the

statutory standards established by ERISA.

The Supreme Court confirmed this point last year in *Fifth Third Bancorp v.*

*Dudenhoeffer*, 134 S.Ct. 2459 (2014).  Plaintiffs there charged that Fifth Third Bancorp officers

had violated their fiduciary duty of prudence by investing ERISA plan assets in Fifth Third

stock, even though they knew such stock was risky and overvalued.  *See id.* at 2464.  The stock

---

[14] From a procedural standpoint, Defendants' prospectus is not properly before the Court
on a motion for judgment on the pleadings because it is not quoted in the complaint; it is not
integral to the complaint; and the complaint does not allege that Plaintiff ever received it.  *See*
*Faulkner v. Beer*, 463 F.3d 130, 134-35 (2d Cir. 2006).  At her deposition, Prof. Cummings
testified that she did not have any independent knowledge of the provisions in the prospectus on
which TIAA-CREF now relies.



gravel &
shea     ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

price fell by 74 percent between July 2007 and September 2009, "eliminat[ing] a large part of the retirement savings that the participants had invested in the [plan]."  *Id.*

The defendants argued that the complaint should be dismissed, pointing to plan documents "commanding the [plan] fiduciary to invest primarily in Fifth Third stock." *Dudenhoeffer*, 134 S.Ct. at 2469.  As the Supreme Court explained:

> The argument is that, by commanding the ESOP fiduciary to invest primarily in Fifth Third stock, the plan documents waived the duty of prudence to the extent that it comes into conflict with investment in Fifth Third stock – at least unless 'extraordinary circumstances' arise that so threaten the goal of employee ownership of Fifth Third stock that the fiduciaries must assume that the settlor would want them to depart from that goal under the common law "deviation doctrine."

134 S.Ct. at 2469.

The Supreme Court rejected the argument.  It said, "[t]his argument fails, however, in light of this Court's holding that, by contrast to the rule at common law, 'trust documents cannot excuse trustees from their duties under ERISA.'"  *Dudenhoeffer*, 134 S.Ct. at 2469 (citing *Central States, SE & SW Areas Pension Fund v. Cent. Trans., Inc.*, 472 U.S. 559, 568 (1985)).  As *Dudenhoeffer*, *Central States* and other cases cited in the margin make clear,[15] TIAA-CREF's assertion that Plaintiff's claims must be dismissed because she "received the value of her account

---

[15] Numerous other courts have rejected the argument that ERISA fiduciaries may rely on trust documents in lieu of ERISA statutory standards.  *See Best v. Cyrus*, 310 F.3d 932, 935-36 (6th Cir. 2002) (district erred in holding that fiduciary's duties were limited to those described in plan document); *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307 (3d Cir. 1979) (rejecting trustees' argument that could rely on plan documents prohibiting them from paying vested retirement benefits to two employers accused of taking kickbacks and instead holding that ERISA statutory duties required such payments); *In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 473-74 (S.D.N.Y. 2005) (rejecting trustees' argument that they did not violate their fiduciary duty ERISA by purchasing company stock for retirement plan even though it was poor investment because plan document required such purchase).  As discussed in the next section, moreover, TIAA-CREF's prospectus does not even rise to the stature of a plan document.

gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 13 -

in accordance with the processing procedures described in the prospectus" begs the question. Defs.' Mot. at 15.  TIAA-CREF's conduct must be measured against the statutory standards established by ERISA, *not* those in TIAA-CREF's prospectus.  As explained above, under ERISA TIAA-CREF must meet industry standards and must deliver investment gains which accrue during distribution delays to plan participants.  It may not rely on its prospectus to trump such standards.

> 2.   The Second Circuit's Decision In *Faber* Does Not Support TIAA-CREF's Position.

TIAA-CREF relies on *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) in arguing that its prospectus controls, but the case is not apposite.  The defendant there, MetLife, acted as a claims administrator for Kodak's and General Motors' ERISA plans.  *See id.* at 100. Both plans held life insurance policies issued by MetLife.  When an employee died and benefits became due, the plans called for MetLife to use the policies to fund interest-bearing accounts called "Total Control Accounts" or "TCAs."  The beneficiary could draw down a TCA either all at once or over time.  *Id.*  One of the two plaintiffs, the estate of Russell Young, withdrew all of its funds the same year the TCA was established.  The other, Carol Faber, withdrew hers over several years.

The plaintiffs in *Faber* did not dispute that they received the entire amount of principal and interest called for by the plans.  Nor was there any suggestion that any distribution was ever delayed.  *See* 648 F.3d at 101.  Rather, plaintiffs claimed that MetLife had breached its fiduciary duty by investing TCA funds which the beneficiaries had chosen not to withdraw.

The Second Circuit rejected the claim.  It held that, once MetLife had funded the TCA accounts and given the beneficiaries full control over them, it ceased to be an ERISA fiduciary. 648 F.3d at 104.  At that point, the Court said, the "arrangement constituted a straightforward

gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

creditor-debtor relationship governed by the Customer Agreements and state law, not ERISA." *Id.* at 105.  In addition, the Court explained, Kodak and GM had designed their plans to provide for payment through TCAs rather than by lump sum distributions.  *Id.* at 104-05.  "MetLife acted in accordance with these provisions," it said.  *Id.* at 105.

There are two critical distinctions between *Faber* and the instant case.  First, TIAA-CREF did not give Plaintiff any control of her funds during the delayed distribution.  Unlike the plaintiff in *Faber*, Prof. Cummings could *not* obtain her funds by writing a check; TIAA-CREF alone controlled when the funds in Plaintiff's account were disbursed.  Accordingly, TIAA-CREF was an ERISA fiduciary until the funds were paid out.  Second, unlike MetLife, TIAA-CREF did not deliver "all of the the benefits promised by the Plan[ ]."  *Faber*, 648 F.3d at 104-05.  In contrast to the prospectus's statement that the account is valued as of the Effective Date, the St. Michael's College Plan provides that "[t]he *processing date* of a transaction will be binding for all purposes of the Plan and *considered the applicable Valuation Date* for an investment transaction."  *See* Third Am. Compl. ¶ 24 (emphasis added).  That is the amount Plaintiff seeks on behalf of herself and the class.[16]

---

[16] The plan is the governing document for both fiduciaries and participants under ERISA. *See CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011).  The TIAA-CREF prospectus is not a plan document, and it does not control.  *Amara* explains that the plan sponsor (in Plaintiff's case, St. Michael's College) "like a trust's settlor, creates the basic terms and conditions of the plan, executes the written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments."  *Id.* at 1877.  The power to set plan terms "is reserved for plan sponsor."  *Durham v. Prudential Ins. of Am.*, 890 F.Supp. 2d 390, 396 (S.D.N.Y. 2012) (citing *Amara*, 131 S.Ct. at 1877).  Once TIAA-CREF exercises control over plan assets, it is deemed a fiduciary under ERISA and is bound by the terms of the plan.

A prospectus is also not a contract, unless it is specifically incorporated in a contract.  *See Bryan Publ'g Co. v. Kuser*, No. 7-07-17, 2008 Ohio App. LEXIS 2198, **13-15 (Ct. App. Ohio 2008); *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F.Supp. 2d 450 (S.D.N.Y. 2000); *Doppett v. Perini Corp.*, 2002 U.S. Dist. LEXIS 4128, *13-*15 (S.D.N.Y. 2002), *aff'd without published opinion*, 53 Fed. Appx. 174 (2d Cir. 2002).

gravel &
shea | ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

The remaining cases cited by TIAA-CREF also do not help its cause.  None involved processing delays, investment gains earned during such delays, or prospectuses.  *Morse v. Stanley*, 732 F.2d 1139 (2d Cir. 1984), cited by Defendants at 16, concerned the scope of the trustees' discretion under the specific plan at issue in that case.  The question was whether the trustees were required to make immediate lump-sum distributions to three employees who quit to join a competitor, or if they had discretion under the plan to wait until the (former) employees turned 65.  *See id.* at 1141.  The court found no abuse of discretion in the trustees' decision to hold back benefits until age 65.  It did emphasize, however, that "at the slightest suggestion that any action was taken with other than the beneficiaries in mind, a trustee is subject to liability for resulting injury that the beneficiaries may suffer."  *Id.* at 1145.

*Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1100 (9th Cir. 2004), is also not on point.  *Wright* concerned an "eligible individual account plan," or "EIAP."  EIAPs "are exempt from several key ERISA provisions" regarding a trustee's duty of prudence.  *Id.* at 1094.  The question was whether such exemptions applied to an EIAP's failure to sell company stock when its price rose due to a merger, and whether plaintiffs could overcome the "presumption of prudence" under *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) if the exemptions did not apply.  *See id.* at 1097-98.  Since the instant case does not involve EIAPs, and since *Moench* has now been overruled by *Dudenhoeffer*, 134 S.Ct. at 2466-71, *Wright* has no relevance.

Finally, TIAA-CREF cites two cases for the proposition that "[t]o receive something more favorable than described in the prospectus would amount to a windfall, which is not afforded under ERISA."  Defs.' Mot. at 16 (citing *Henry v. Champlain Enter., Inc.*, 445 F.3d 610 (2d Cir. 2006), and *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d  671 (3d Cir. 1999)).  Neither case stands for that proposition.  The issue in *Henry* was whether the price an

gravel &
shea   | ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION                                           - 16 -

Employee Stock Ownership Plan paid for (company) stock met ERISA requirements.  The

Second Circuit reversed the lower court's conclusion that the price did not meet such

requirements and remanded.  *Henry* had nothing to do with prospectuses, and the instant case has

nothing to do with the proper price to be paid for company stock by an ESOP.

*Bennett* is equally inapposite.  In *Bennett*, the plan borrowed $290 million from Conrail,

used the funds to purchase Conrail stock, and placed the stock into an unallocated account not

associated with any individual employee.  168 F.3d at 674.  Each employee had an individual

account into which they could contribute a portion of their salary, which Conrail matched with

stock from the unallocated account.  *Id.*  Conrail was ultimately purchased for more than the

market value for shares of its stock, leaving an unplanned cash surplus in the unallocated account

after the plan paid Conrail back the $290 million it borrowed.  *Id.* at 675.  The question asked

and answered in *Bennett* was whether the plan could be amended to specify how to divvy up

cash unexpectedly generated by an account not associated with any individual.  That question is

irrelevant to this case.  Rather, the question here is whether TIAA-CREF may take funds

generated by individual customer accounts and use them to cover losses it caused by delaying the

processing of other customer orders.  In contrast, in *Bennett* it was undisputed that every current

or former Conrail employee received "the total vested balance in their individual accounts."  *Id.*

III.    TIAA-CREF SHOULD NOT BE PERMITTED TO AVOID FINANCIAL
         RESPONSIBILITY FOR ALLEGED ERISA VIOLATIONS BY MEANS OF A
         CORPORATE SHELL GAME.

TIAA-CREF asserts that two of the Defendant entities, TCIM and TAI, should be

dismissed because the allegations against them are insufficient.  It appears this argument is an

effort to remove the Defendant entities with assets sufficient to cover a possible judgment from



gravel &
shea    ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 17 -

the litigation. However, Plaintiff's allegations and Second Circuit precedent support treating TIAA-CREF as a single entity and keeping TCIM and TAI in, particularly at this early stage.

TCIM and TAI provide investment advice and management services to CREF funds. Third Am. Compl. ¶ 9; Sec. Am. Compl. ¶ 9. TIAA-CREF "is a group of closely-related and affiliated companies and subsidiaries," including TCIM and TAI. Third Am. Compl. ¶ 5; Sec. Am. Compl. ¶ 5. The Complaint defines TIAA-CREF to "refer to each of the companies which comprise the TIAA-CREF group, including the companies specifically named as Defendants." Third Am. Compl. ¶ 6; Sec. Am. Compl. ¶ 6. Specifically, the TIAA-CREF companies: (1) share corporate governance; (2) provide services to one another at cost as independent companies would not; (3) share employees; and (4) market themselves to the public as a single entity. Third Am. Compl. ¶ 6.

Moreover, it appears that the Defendant entities are so arranged that the responsible entities will not have sufficient assets to satisfy a possible judgment. *Id.* "Some TIAA-CREF entities are run as non-profit or not-for-profit, while others are run for profit." Third. Am. Compl. ¶ 6. Thus, some such entities would not have assets sufficient to satisfy a judgment on behalf of the putative class. *Id.* at ¶ 6. On information and belief, TIAA, CREF, and TIAA-CREF Individual & Institutional Services, LLC, which acted as broker-dealer, have insufficient assets to satisfy a judgment. *Id.* at 7, 8, 10. TCIM and TAI are the only TIAA-CREF entities operated for profit. *Id.* at 9.

The Second Circuit has held that "parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits . . . to another legal entity under their control." *Lowen,* 829 F.2d at 1220. TIAA-CREF's attempt to engage in such maneuvers should be rejected.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

The plaintiff in *Lowen* brought suit under ERISA against three related entities – an entity acting as investment manager to the plan, an investment banking corporation, and a registered broker-dealer.  *Id*. at 1212.  The entities were found to have intermixed assets and shared employees and equipment, among other factors.  *See id*.  The court found that, under the circumstances, "a failure to disregard the corporate form would fatally undermine ERISA."  *Id*.

Indeed, "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined."  *Id*. at 1220.

> ERISA . . . cannot be said to attach great weight to corporate form. Indeed, deferring too readily to the corporate identity may run contrary to the explicit purposes of the Act.  Congress enacted ERISA in part because many employees were being deprived of anticipated benefits, which not only reduced the financial resources of individual employees and their dependents but also undermined the stability of industrial relations generally . . . Allowing the shareholders of a marginal corporation to invoke the corporate shield in circumstances where it is inequitable for them to do so and thereby avoid financial obligations to employee benefit plans, would seem to be precisely the type of conduct Congress wanted to prevent.

*Id*., quoting *Alman v. Danin,* 801 F.2d 1 (1st Cir. 1986).  *See also, Confer v. Custom Eng'g Co*., 952 F.2d 34, 37 n.4 (3d Cir. 1991) (agreeing "misuse of [corporate] form may, of course, lead to . . . piercing the corporate veil"); *Ferrara v. Oakfield Leasing Inc., 904 F. Supp. 2d 249, 267 (E.D.N.Y. 2012)* ("To protect employee benefits, courts attempt to ensure a general federal policy of piercing the corporate veil when necessary.")

Accordingly, given the circumstances under which the TIAA-CREF entities are alleged to operate, the corporate form should be disregarded in order to effect ERISA's purpose and ensure that TIAA-CREF cannot avoid its financial obligations to the Plaintiff and the putative class.

gravel &
shea   ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 19 -

The cases relied upon by TIAA-CREF are inapposite to the facts at hand.  In each, the defendants were wholly unrelated.  For example, in *Atuahene v. City of Hartford,* 10 F. App'x 33 (2d Cir. 2001), the plaintiff lumped together a city with various businesses and unrelated individuals.  Likewise, in *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,* No. 12 CIV. 2837 KBF, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), and *Medina v. Bauer*, No. 02 CIV. 8837(DC), 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004), the plaintiffs failed to differentiate between various unrelated companies.  These cases have no application here, since TIAA-CREF is comprised of closely-related companies that together hold themselves out as a single entity.

Indeed, in circumstances similar to the instant case, a court in this circuit declined to follow *Atuahene*.  In *Anwar v. Fairfield Greenwich Ltd.,* 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010), the plaintiff brought suit for securities fraud, breach of fiduciary duty and misrepresentation against numerous related entities – Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd. ("Citco entities').  Plaintiff alleged that "Citco both markets and operates itself as a single financial services provider" and that services might have been provided by any of the Citco companies.  *Id*. at 393.

In an effort to secure dismissal, the Citco entities cited to *Atuahene*.  *See id*. at 422.  The court rejected this argument, finding that the pleadings did distinguish between the defendants and, when making allegations against defendants as a whole, did assert a factual basis for doing so.  *Id*.  It concluded:

> Given that Plaintiffs clearly define Citco in the [complaint] to include each of the Citco Defendants, as well as Plaintiffs' allegations regarding the relationship among the Citco Defendants, the Court finds that Plaintiffs have provided sufficient notice to each of the Citco Defendants of the claims against them, satisfying the requirements of Rule 8(a).

gravel & shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 20 -

*Id*.; *see also, Dumont v. Litton Loan Servicing, LP,* No. 12-CV-2677-ER-LMS, 2014 WL

815244 at *2 (S.D.N.Y. Mar. 3, 2014).

As in *Anwar*, Plaintiff here has adequately described the relationship among the

TIAA-CREF companies, pled a factual basis for asserting allegations against all of them,

and put each entity on notice of the claims against it.  Accordingly, TIAA-CREF's

attempt to dismiss TAI and TCIM from the case prior to discovery about their

relationship and assets should be rejected.

Conclusion

Plaintiff has stated causes of action under ERISA for breach of the fiduciary duty of care,

breach of the fiduciary duty of loyalty, and a prohibited transaction.  TIAA-CREF may not avoid

these claims by pointing to its prospectus, because the Supreme Court has made clear that the

ERISA statute governs.  Under the statute, a fiduciary must meet industry standards for timely

processing orders; must return gains earned during processing delays to the plan participant

whose funds generated them; and may not deposit such gains for its own account to cover its

own liabilities.  Plaintiff alleges that TIAA-CREF did all of those things here.

TIAA-CREF's other arguments are also not well-taken.  Its attempt to re-characterize

Plaintiff's count for breach of the duty of care as a non-actionable securities claim would, if

accepted, undermine the common-law protection which ERISA codified and strengthened.  Its

effort to dismiss, prior to discovery, the only two TIAA-CREF entities which appear to have

assets sufficient to cover a judgment would similarly weaken ERISA protections.

gravel &
shea  |  ATTORNEYS AT LAW

76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 21 -

For all of these reasons, Defendants' motion for judgment on the pleadings should be denied and discovery allowed to proceed.

Dated:          Burlington, Vermont
                August 31, 2015

_/s/ Norman Williams_
Norman Williams, Esq.
Robert B. Hemley, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
nwilliams@gravelshea.com
rhemley@gravelshea.com

and

Thomas A. Tucker Ronzetti, Esq.
Kenneth Hartmann, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL  33134
tr@kttlaw.com
krh@kttlaw.com

For Plaintiff

gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION                   - 22 -