## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| SARAH E. CUMMINGS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Docket No. 1:12-cv-93 |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT AND EQUITIES FUND (TIAA-CREF), COLLEGE RETIREMENT AND EQUITIES FUND (CREF), TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA (TIAA), TIAA-CREF INVESTMENT MANAGEMENT, LLC (TCIM), TEACHERS ADVISORS, INC. (TAI), AND TIAA-CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Lori A. Martin (*pro hac vice*)
David Berman (*pro hac vice*)
Jacob Warren (*pro hac vice*)
Wilmer Cutler Pickering
Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 295 6412
Facsimile: (212) 230 8888
Email: lori.martin@wilmerhale.com
        david.berman@wilmerhale.com
        jacob.warren@wilmerhale.com

Howard Shapiro (*pro hac vice*)
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
Telephone: (504) 310 4085
Facsimile: (504) 310 2022
Email: howshapiro@proskauer.com

Richard C. Carroll
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Avenue
Brattleboro, VT 05301
Telephone: (802) 257-7244
Email: rcarroll@pdsclaw.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................3

    A.    The Parties ...................................................................................3

    B.    Prospectus Disclosures and Industry Practice ............................4

    C.    Prior Proceedings ........................................................................6

        1.    Norman Walker – Original Plaintiff ...............................6

        2.    Christine Bauer-Ramazani – Intervener.........................7

        3.    Sarah Cummings – Proposed Intervener.........................8

    D.    The Cummings Complaints ...........................................................8

ARGUMENT ..........................................................................................................10

I.    THERE IS NO PRIVATE RIGHT OF ACTION UNDER ERISA TO ENFORCE BROKER DEALER REGULATIONS REGARDING TRANSACTION PROCESSING ..........................................................................................10

    A.    Broker Dealer Regulations Do Not Provide a Private Right of Action .................11

    B.    ERISA Provides No Private Right of Action for Non-Compliance with Section 15(c) .........................................................................12

    C.    ERISA Provides No Private Right of Action for Non-Performance In Accord With Industry Practice .....................................................15

II.    THERE CAN BE NO BREACH OF DUTY OF LOYALTY OR A PROHIBITED TRANSACTION WHERE PLAINTIFF RECEIVES PRECISELY WHAT DEFENDANTS PROMISED TO PROVIDE IN THE PROSPECTUS.............................17

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981)................................................................................................14

*Asch v. Philips, Appel & Walden, Inc.*,
  867 F.2d 776 (2d Cir. 1989)....................................................................................11

*Baker v. New York Cit*y,
  934 F. Supp. 533 (E.D.N.Y. 1996) .........................................................................10

*Bennett v. Conrail Matched Savings Plan Administration Committee*,
  168 F.3d 671 (3d Cir. 1999).....................................................................................19

*Board of Trustees of Operating Engineers Pension Trust v. JPMorgan Chase Bank,*
  *National Association*,
  No. 09-civ-9333, 2013 WL 1234818 (S.D.N.Y. Mar. 27, 2013)............................20

*Brannan v. Eisenstein*,
  804 F.2d 1041 (8th Cir. 1986) .................................................................................12

*Clark v. Feder Semo & Bard, P.C.*,
  739 F.3d 28 (D.C. Cir. 2014) ............................................................................13, 14

*Cort v. Ash*,
  422 U.S. 66 (1975).............................................................................................11, 16

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982).....................................................................................21

*Epstein v. Haas Securities Corp.*,
  731 F. Supp. 1166 (S.D.N.Y. 1990).........................................................................11

*Faber v. Metropolitan Life Insurance Co.*,
  No. 08-civ-10588, 2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98
  (2d Cir. 2011)......................................................................................................17, 18

*Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002).................................................................................................13

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009).......................................................................................10

*Heimeshoff v. Hartford Life & Accident Insurance Co.*,
  134 S. Ct. 604 (2013)...............................................................................................19

*Henry v. Champlain Enterprises, Inc.*,
   445 F.3d 610 (2d Cir. 2006)...................................................................................19

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) ...............................................................................11

*Kessler v. Colvin*,
   48 F. Supp. 3d 578 (S.D.N.Y. 2014)......................................................................10

*Komanoff v. Mabon, Nugent & Co.*,
   884 F. Supp. 848 (S.D.N.Y. 1995) .........................................................................12

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)...................................................................................10

*LaScala v. Scrufari*,
   479 F.3d 213 (2d Cir. 2007)...................................................................................20

*Lowen v. Tower Asset Management, Inc.*,
   829 F.2d 1209 (2d Cir. 1987).................................................................................20

*Massachusetts Mutual Life Insurance Co. v. Russell*,
   473 U.S. 134 (1985)........................................................................................ *passim*

*Morse v. Stanley*,
   732 F.2d 1139 (2d Cir. 1984).................................................................................18

*Reklau v. Merchants National Corp.*,
   No. IP 84-1389-C, slip op. (S.D. Ind. Oct. 11, 1985) ...........................................14

*Reklau v. Merchants National Corp.*,
   808 F.2d 628 (7th Cir. 1986) ...........................................................................14, 15

*Snyder v. Newhard, Cook & Co.*,
   764 F. Supp. 612 (D. Colo. 1991) ..........................................................................12

*Unity House, Inc. v. North Pacific Investments, Inc.*,
   918 F. Supp. 1384 (D. Haw. 1996) ........................................................................12

*US Airways, Inc. v. McCutchen*,
   133 S. Ct. 1537 (2013)............................................................................................19

*Useden v. Acker*,
   734 F. Supp. 978 (S.D. Fla. 1989), *aff'd*, 947 F.2d 1563 (11th Cir. 1991).............14

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...............................................................................18

**Docketed Cases**

*Bauer-Ramazani v. TIAA-CREF*, No. 09-190 (D. Vt.) .......................................................... *passim*

**Codes, Statutes & Regulations**

17 C.F.R. § 240.15c6-1(a) ...................................................................................................5, 11

29 C.F.R. § 2509.75-8................................................................................................................21

29 U.S.C. § 1104(a)(1)...............................................................................................................18

**Other Authorities**

Securities Transaction Settlement, File No. IC-21117, Release Nos. 33-7177, 34-35815, 1995 SEC
    LEXIS 1436, 60 Fed. Reg. 30906 (June 6, 1995)...................................................................5

Defendants Teachers Insurance and Annuity Association of America – College Retirement Equities Fund (TIAA-CREF), College Retirement Equities Fund (CREF), Teachers Insurance and Annuity Association of America (TIAA), TIAA-CREF Investment Management, LLC (TCIM), Teachers Advisors, Inc. (TAI), and TIAA-CREF Individual and Institutional Services, LLC (TC Services) (together, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings dismissing the Third Amended Complaint in this action (the "Complaint") on the ground that it fails to state a claim for relief.

## PRELIMINARY STATEMENT

Plaintiff Sarah Cummings was an account owner of a TIAA-CREF retirement account. The prospectus governing the investments in her account discloses that Defendants process certain transaction requests within seven calendar days after the effective date of each transaction.  The prospectus further discloses that, in the event there are market fluctuations between the effective date and the processing date, account holders receive the price on the effective date.  Plaintiff alleges that Defendants should have processed her transaction earlier than seven calendar days based upon her claim that the "industry" processes transactions more quickly than do Defendants. Plaintiff, however, received exactly what Defendants promised in her prospectus:  the good order price processed within seven days.  She complains that she is entitled to more than this, and alleges that Defendants should have credited her retirement account with any gains based upon market fluctuations that occurred between the effective date and processing date of her transfer request. Losses, she contends, should be borne by Defendants.

Plaintiff avers that Defendants' conduct violated their fiduciary duties of care and loyalty, and constituted a prohibited transaction, under the Employee Retirement Income Security Act of 1974 ("ERISA").  As shown below, these allegations are meritless.

*First*, assuming *arguendo* that Defendants violated the SEC's regulations for the processing of securities transactions, there is no private right of action for non-compliance with these rules.  Congress did not create a private right of action for violations of the SEC's processing rules, and Plaintiff cannot prosecute one in this case.  Nor can she bootstrap these regulations into a general fiduciary obligation under ERISA.  The carefully integrated civil enforcement provisions found in ERISA do not allow Plaintiff to write a new private cause of action into that statute for allegedly breaching broker-dealer regulations based on a different statute.

*Second*, there is no private right of action for processing variable annuity transactions at a slower pace than others in an "industry."  Nothing in the ERISA statute provides for a recovery if Defendants require more time to process their clients' transaction requests than a competitor.  ERISA was not designed to penalize companies that allegedly do not provide services more quickly or more efficiently than others.  The Supreme Court rejected an analogous argument with respect to the untimely processing of benefit claims and no different outcome is required here.

*Third*, vague claims of industry practices do not trump the rights and procedures specified in the prospectus.  Plaintiff admittedly received what the prospectus governing the investments in her accounts required as to her transaction request:  an amount reflecting the effective date price paid within seven calendar days from the effective date.[1]  There is no breach of fiduciary duty for meeting a standard of care specified in the investment documents.  Under similar reasoning, this Court previously rejected identical duty of loyalty and prohibited transaction claims brought by Norman Walker and Christine Bauer-Ramazani.  These same claims should be dismissed in this action as well.

---

[1]     The effective date is the date on which a customer's transfer or withdrawal request is received in good order.

## BACKGROUND

### A.     The Parties

Plaintiff Sarah Cummings was a college professor at St. Michael's College and the owner of a TIAA-CREF retirement account.  (Compl. ¶ 4.)  In 2006, after her employer selected a new mutual fund platform for its employee accounts, Plaintiff requested that Defendants transfer her account to the new platform.  (Compl. ¶¶ 26, 27.)  Cummings alleges that she submitted a written request to transfer her retirement account from TIAA-CREF to Milliman USA on April 27, 2007, that Defendants recorded May 1, 2007 as the "effective date" for her request and all other St. Michael's College employee requests, and that Defendants processed her transaction within seven calendar days of the effective date.  (Compl. ¶¶ 30, 31.)

Defendant TIAA-CREF is a trade name under which various TIAA- and CREF-affiliated entities do business.[2]  It is not a distinct legal entity, but Plaintiff nonetheless includes TIAA-CREF as a party to this action.  (Compl. ¶ 5.)  TIAA is a stock life insurance company that offers traditional and variable annuities.  (Compl. ¶ 8.)  CREF, a companion organization to TIAA, is a nonprofit membership corporation established in New York State that offers variable annuities through a choice of eight investment accounts.  (Compl. ¶ 7.)[3]  TIAA, CREF, TCIM, and TAI are not alleged to have breached any specific duties to Plaintiff.  Plaintiff asserts that all of these separate entities should be treated as a single company, which they call TIAA-CREF.  (Compl. ¶ 6.)

Defendant TC Services is a broker-dealer for TIAA and CREF.  (Compl. ¶ 10.)  Plaintiff alleges that non-specific, industry standards required Defendants to transmit customer orders on

---

[2]     Declaration of David Berman, dated November 2, 2015 ("Berman Decl."), Ex. A (CREF Prospectus, dated May 1, 2007) at 1.

[3]     *See also* Berman Decl., Ex. A at 1.

the dates it received them, and to process the transaction within three business days following the effective date of those requests.  (Compl. ¶¶ 14, 15.)  Plaintiff avers that TC Services did not transmit or process her orders in a timely fashion.  (Compl. ¶¶ 15, 31.)

### B.     Prospectus Disclosures and Industry Practice

Plaintiff alleges that she had retirement funds invested in CREF.  (Compl. ¶ 7.)  The prospectus for CREF includes disclosures regarding times for processing fund transactions.  At the time that Plaintiff invested in CREF, the prospectus included the following disclosures:

**DETERMINING THE VALUE OF YOUR CONTRACT —
ACCUMULATION UNITS**

To determine the amount of money in your account, we use a measure called an accumulation unit.  Each payment to your contract, which is credited at the end of the business day in which we receive it in good order, buys a number of accumulation units.  This date, as well as the date that any order to sell accumulation units is received in good order is called the "effective date." Premiums received may be processed after the effective date.  Similarly, orders to sell accumulation units may be processed after the effective date.  In the event there are market fluctuations between the effective date and the processing date, participants will receive the effective date price.  The difference between the value of the units on the effective date and the processing date is an expense of TIAA-CREF Individual & Institutional Services, LLC.  This expense, together with similar expenses associated with pension transactions utilizing other pension products provided by TIAA or its affiliates, is apportioned to CREF pursuant to its reimbursement agreement with TIAA-CREF Individual & Institutional Services, LLC.  The accumulation unit value for each account depends on the Account's investment performance and its expenses.  We calculate accumulation unit values at the end of each valuation day.  The number of accumulation units you own equals your accumulation in an Account divided by the accumulation unit value for that Account.  To determine accumulation unit values for [College Retirement Equities Fund] transfers and cash withdrawals, we use the unit values calculated at the end of the business day on which we receive your completed request and required documents.[4]

\* \* \*

**HOW TO TRANSFER AND WITHDRAW YOUR MONEY**

---

[4]     Berman Decl., Ex. A at 43-44.

Transfers and cash withdrawals are effective at the end of the business day we receive your request and all required documentation.  You can also choose to have [College Retirement Equities Fund] transfers and withdrawals take effect at the end of any future business day.[5]

* * *

**TIMING OF PAYMENTS**

In general, we will make the following types of payments within seven calendar days after we've received the information we need to process a request:  cash withdrawals, transfers to TIAA or to other companies; payments under a fixed period annuity; and death benefits.[6]

Defendants' processing times for investments in CREF – within seven calendar days of a transaction's effective date – are in accord with regulatory guidance.  Although Rule 15c6-1, which was promulgated under Section 15(c) of the Securities Exchange Act of 1934 ("Exchange Act"), provides for payment of funds and delivery of securities no "later than the third business day after the date of the contract," the SEC has granted industry-wide relief for variable annuity contracts and other insurance securities products.  *See* Securities Transaction Settlement File IC-21117, Release Nos. 33-7177, 34-35815, 1995 SEC LEXIS 1436, 60 Fed. Reg. 30906 (June 6, 1995).[7]  In response to a request from the American Council of Life Insurers, a trade association of 300 insurance companies located in the U.S. and around the world, the SEC agreed that the applicants need not settle transactions within three business days due to "the complex nature and various unique processing requirements involved in the purchase or sale of insurance securities products [which] cannot practically be condensed into a T+3 settlement cycle."[8]  The American Council of Life Insurers represents more than 90% of industry assets and premiums.[9]

---

[5]       Berman Decl., Ex. A at 45-46.

[6]       Berman Decl., Ex. A at 55-56.

[7]       Berman Decl., Ex. B.

[8]       Berman Decl., Ex. B at 2.

[9]       American Council of Life Insurers, "Who We Are, What We Do," appearing at https://www.acli.com/About%20ACLI/Pages/Default.aspx.

## C.     Prior Proceedings

### 1.     Norman Walker – Original Plaintiff

In August 2009, Norman Walker, a professor at St. Michael's College in Vermont, filed a

class action complaint against Defendants, alleging that Defendants' transaction procedures

violated ERISA.[10]  Walker was an account owner of a TIAA-CREF retirement account from 1995

to 2007, during the period that the St. Michael's retirement plan directed its plan participants to

move their assets from TIAA-CREF to another financial institution.[11]  Walker acknowledged that

Defendants processed his transaction request *within seven days* of May 1, 2007, which was the

effective date applied for all St. Michael's College participants.  However, Walker alleged that

Defendants failed to pay him "investment profits" generated by market fluctuations between the

effective date and processing date of his request.[12]  In September 2011, this Court dismissed

Walker's claims at summary judgment on the ground that "Professor Walker received his money

in the seven days" prescribed by the prospectus.[13]  In May 2012, Walker moved for

reconsideration.[14]  Citing the prospectus disclosure, this Court denied his reconsideration motion

and held, as it did before, that Walker "received what the prospectus governing his account

required:  payment within seven days from the business day chosen for his transfer to take effect"

(i.e., May 1, 2007).[15]

---

[10]      *Bauer-Ramazani*, No. 09-190, Compl. at ¶ 3 (D. Vt. Aug. 17, 2009) (ECF No. 1).

[11]      *Id*. at ¶¶ 4, 8-12.

[12]      *Id*. at ¶ 14.

[13]      *Bauer-Ramazani*, No. 09-190, Minute Entry (Sept. 19, 2011) (ECF No. 108); *Bauer-Ramazani*, No. 09-190, Hr'g Tr. 23:21 (Sept. 19, 2011) (ECF No. 143).

[14]      *Bauer-Ramazani*, No. 09-190, Mot. for Reconsideration (May 10, 2012) (ECF No. 139).

[15]      *Bauer-Ramazani*, No. 09-190, Mem. & Order at 3 (Sept. 7, 2012) (ECF No. 186); *see Bauer-Ramazani*, No. 09-190, Mem. & Order at 2 (Nov. 27, 2013) (ECF No. 404) (quoting same as ground for dismissing Walker's ERISA claims).

### 2.   Christine Bauer-Ramazani – Intervener

Christine Bauer-Ramazani was an instructor at St. Michael's College.[16]  In February 2011, she moved to intervene in the *Walker* action.[17]  Unlike Walker, Bauer-Ramazani alleged that Defendants processed her transaction request ***more than seven days*** after the May 1 effective date applied to all St. Michael's College participants.  This Court granted Bauer-Ramazani's motion to intervene.  Bauer-Ramazani's Complaint included the following allegations:  (a) Defendants breached their ERISA duty of loyalty by failing to pay "investment profits" generated by market fluctuations between the effective date and processing date of her request; (b) Defendants' conduct constituted a prohibited transaction under ERISA; and (c) Defendants breached their ERISA duty of impartiality by providing certain account owners with compensation for delayed transaction processing in the form of lost investment experience.[18]  This Court dismissed on summary judgment all but Bauer-Ramazani's ERISA duty of loyalty claim.[19]  Her sole remaining claim was scheduled for trial on behalf of ERISA variable annuity account owners whose transfer or redemption requests were processed ***more than seven*** calendar days after their effective dates.[20]  Defendants settled the *Bauer-Ramazani* case in January 2014, and this Court approved the settlement on September 3, 2014.[21]

---

[16]     *Bauer-Ramazani*, No. 09-190, Consol. Second Am. Compl. at ¶ 5 (Sept. 2, 2011) (ECF No. 104).

[17]     *Bauer-Ramazani*, No. 09-190, Mot. to Intervene (Feb. 17, 2011) (ECF No. 68).

[18]     *Bauer-Ramazani*, No. 09-190, Consol. Fourth Am. Compl. (Oct. 12, 2012) (ECF No. 205).

[19]     *Bauer-Ramazani*, No. 09-190, Mem. & Order (Nov. 27, 2103) (ECF No. 404).

[20]     *Bauer-Ramazani*, No. 09-190, Pls.' Mot. for Preliminary Approval of Proposed Class Action Settlement (Jan. 31, 2014) (ECF No. 418) and Order Granting Mot. For Entry of Final J. (Feb. 25, 2014) (ECF No. 421).

[21]     *Bauer-Ramazani*, No. 09-190, Pls.' Motion for Preliminary Approval of Proposed Class Action Settlement at 5-8 (Jan. 31, 2014) (ECF No. 418) and Order Granting Final Approval of Class Action Settlement & Final J. (Sept. 3, 2014) (ECF No. 436).

### 3.     Sarah Cummings – Proposed Intervener

Ms. Cummings, the plaintiff in this action, is also a professor at St. Michael's College. (Compl. ¶ 4.)  Like Walker, Cummings alleges that Defendants processed her transactions **within seven days** of the effective date, May 1, 2007.  (Compl. ¶ 30.)  Cummings moved to intervene in *Walker/Bauer-Ramazani*, alleging that "[her] legal claims are virtually identical to the claims of the present Plaintiffs, and that the slight factual differences between their claims and [Cummings'] claims would only serve to strengthen the adequacy of the class representation."[22]  Cummings acknowledged that she "stands in the same position as Plaintiff Walker, except that summary judgment has not been entered against her."[23]  This Court denied Cummings' intervention motion, observing that she is "no different than Mr. Walker."[24]  During oral argument on the motion to intervene, this Court asked whether the separate Cummings action was "going to go away?"[25]  Cummings' counsel stated:  "[C]ertainly that, that is a possibility."[26]  This Court responded:  "All right.  Well, do it in short order, please, because my inclination would be to dismiss that case."[27]

### D.     The Cummings Complaints

Cummings declined to dismiss the action.  Instead, one month after the hearing on her Motion to Intervene in *Walker*, Cummings filed a First Amended Complaint.[28]  Within weeks after this Court issued a final order approving the *Bauer-Ramazani* settlement, Cummings filed a

---

[22]     *Bauer-Ramazani*, No. 09-190, Pls.' Mot. to Intervene at 1-2 (May 10, 2012) (ECF No. 140).  *See also Bauer-Ramazani*, No. 09-190, Pls.' Mem. in Support of Mot. to Intervene at 3, n.3 (May 10, 2012) (ECF No. 140-1) ("Prof. Duffy and Prof. Cummings only add a few additional factual details to Plaintiffs' allegations.").

[23]     *Bauer-Ramazani*, No. 09-190, Pls'. Mem. in Support of Mot. to Intervene at 7 (May 10, 2012) (ECF No. 140-1).

[24]     *Bauer-Ramazani*, No. 09-190, Hr'g Tr. 8:18-10:14 (Oct. 3, 2012) (ECF No. 215).

[25]     *Id.* at 10:2-3.

[26]     *Id.* at 10:5-6

[27]     *Id*. at 10:9-11

[28]     First Am. Compl. (Nov. 7, 2012) (ECF No. 17).

Second Amended Complaint.[29]  On March 15, 2015, this Court dismissed the state law claims as preempted.  On July 1, 2015, Defendants moved to dismiss the remaining ERISA claims in the action.  Shortly after Defendants moved for judgment on the pleadings, Cummings requested leave to file a Third Amended Complaint.  This Court granted Plaintiff's motion on October 8, 2015.[30]

The Third Amended Complaint includes the same three counts as the Second Amended Complaint.  Count One alleges that a failure to settle within three business days is not "in accordance with industry practice or regulatory requirements" and breached Defendants' ERISA fiduciary duty of care.  (Compl. ¶ 54.)  Count Two alleges that Defendants breached their ERISA fiduciary duty of loyalty by processing a transaction request within seven days of the effective date and failing to pay alleged "investment profits" generated by market fluctuations between the effective date and processing date.  Count Three alleges that Defendants kept the gains earned by Plaintiff's funds in their own interest to satisfy their obligations to other customers.  The use of Plaintiff's funds for such purposes, Plaintiff maintains, was an ERISA prohibited transaction.

Counts Two and Three are stretched-out, dressed-up versions of claims that this Court dismissed in *Walker* and *Bauer-Ramazani*.  This Court twice rejected Walker's claim that Defendants breached their ERISA fiduciary duty of loyalty by failing to pay alleged "investment profits" generated by market fluctuations between the effective date and the processing date of a transaction request that was processed within seven days of the effective date.  In Count Three, the Cummings Complaint alleges that Defendants' failure to pay such "investment profits" constituted a prohibited transaction under ERISA – a claim this Court rejected in *Bauer-Ramazani*.

---

[29]     Second Am. Compl. (Oct. 15, 2014) (ECF No. 39).

[30]     Order (Oct. 8, 2015) (ECF No. 102).

## ARGUMENT

A motion for judgment on the pleadings may be made any time after the pleadings are closed.  *See Baker v. New York Cit*y, 934 F. Supp. 533, 534 (E.D.N.Y. 1996).  Under Rule 12(c) of the Federal Rules of Civil Procedure, "judgment on the pleadings is appropriate when the material facts are undisputed and a party is entitled to judgment as a matter of law based on the contents of the pleadings."  *Kessler v. Colvin*, 48 F. Supp. 3d 578, 589 (S.D.N.Y. 2014).  Defendants need not concede the veracity of the allegations in the Complaint.  Rather, in considering a Rule 12(c) motion, courts "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor."  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  The court may consider documents referenced in an answer – such as the CREF prospectus – on a motion for judgment on the pleadings.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## I.      THERE IS NO PRIVATE RIGHT OF ACTION UNDER ERISA TO ENFORCE BROKER DEALER REGULATIONS REGARDING TRANSACTION PROCESSING

In Count One of the Complaint, Plaintiff relies on the following assertions to attempt to show that Defendants breached a duty of care:  (a) broker dealers are responsible for processing customer orders (Compl. ¶ 50); (b) broker dealers are subject to administrative regulations regarding processing (Compl. ¶ 52); (c) regulatory requirements require that broker dealers "transmit" a customer sell order "on the date it was received" (Compl. ¶ 54); and (d) a customer transaction must be "settle[d]" within three days.  (Compl. ¶ 55.)  A broker dealer that failed to settle a transaction within three business days, Plaintiff alleges, did not act in accordance with regulatory requirements or industry practice.  (Compl. ¶ 54.)

These facts, even if true, are insufficient to state a claim.  There is no private right action for violations of the SEC's broker-dealer transaction processing regulations.  There is no cause of

action under ERISA to challenge alleged non-compliance with those regulations.  And there is no cause of action under ERISA for requiring more time to process customer transactions than others in an industry.

### A.    Broker Dealer Regulations Do Not Provide a Private Right of Action

As discussed above, the broker-dealer regulation regarding a three-day settlement time frame is set forth in SEC Rule 15c6-1, which was promulgated under Section 15(c) of the Exchange Act.  *See* 17 C.F.R. § 240.15c6-1(a).  Neither the Exchange Act nor Rule 15c6-1 creates a private right of action in the event that a broker or dealer effects a transaction later than the third business day after the date of the contract.  Nor have courts implied one.

The United States Court of Appeals for the Second Circuit, in *Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989), expressly considered whether Congress intended to create a private right of action for violations of Section 15(c) of the Exchange Act and concluded that it did not.  Under *Cort v. Ash*, 422 U.S. 66, 78 (1975), the Second Circuit reasoned, "the central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."  *Asch*, 867 F.2d at 777.  The Second Circuit found nothing in Section 15(c) to indicate that Congress intended to create a private cause of action for violations of that section of the Exchange Act.  *Id.*

Similarly, numerous courts have ruled that there is no implied private right of action for violations of Section 15(c).  *See, e.g.,  Epstein v. Haas Sec. Corp.*, 731 F. Supp. 1166, 1180 (S.D.N.Y. 1990) ("While the holding of *Asch* applies only to Section 15(c)(1) and the plaintiffs in this action do not specify under which subsection of Section 15(c) they bring their action, the analysis in *Asch* clearly applies to Section 15(c) in its entirety."); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) ("[W]e affirm the district court's order granting summary judgment to Titan on appellants' claims under § 15 of the [Exchange] Act because this section

does not give rise to a private right of action."); *Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n.1 (8th Cir. 1986) (affirming dismissal of claims brought under Section 15 of the Exchange Act because that section does not confer a private right of action); *Snyder v. Newhard, Cook & Co.*, 764 F. Supp. 612, 616-17 (D. Colo. 1991) (same).  In the absence of congressional intent to create a private right of action under Section 15, the enabling rules cannot create private remedies.  *See Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 857-58 (S.D.N.Y. 1995) (dismissing claim brought under SEC Rule 15c-1 because "the statutory basis for Rule 15c, Section 15(c)(1) of the 1934 Securities Exchange Act, does not create a private right of action"); *Unity House, Inc. v. N. Pac. Invs., Inc.*, 918 F. Supp. 1384, 1389 (D. Haw. 1996) (dismissing claims under Section 15(c) and enabling rule).

## B.    ERISA Provides No Private Right of Action for Non-Compliance with Section 15(c)

Unable to proceed with direct claims under Section 15(c) of the Exchange Act, Plaintiff instead attempts to bootstrap alleged violations of the broker dealer regulations relating to transaction processing into violations of ERISA.  Although ERISA has no express provision for violations of these regulations, Plaintiff asks this Court to imply an action under the umbrella of a general breach of the fiduciary duty of care.  Here again Plaintiff's effort to create an implied right of action must fail.

The Supreme Court held in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146 (1985), that the "carefully integrated" enforcement scheme in Title I of ERISA is part of a "comprehensive and reticulated" statute that does not provide for implied causes of action.  In rejecting an argument that ERISA created an implied cause of action for extra-contractual damages, the Supreme Court reasoned that there are six civil enforcement provisions in ERISA, which is "strong evidence that Congress did not intend to authorize other remedies that it simply

forgot to incorporate expressly." *Id.*  The Court stated further:  "[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme." *Id.*

The Court has described ERISA as a "comprehensive" statute that is the "product of a decade of congressional study of the Nation's private employee benefit system" and cautioned courts to avoid "extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).  Building on the holding of *Massachusetts Mutual*, appellate courts have concluded that novel causes of action not authorized expressly by ERISA are impermissible.  *Clark v. Feder Semo & Bard, P.C.*, 739 F.3d 28, 29 (D.C. Cir. 2014) (noting that the Supreme Court has repeatedly warned courts against "permitting suits to proceed under ERISA based upon novel causes of action not expressly authorized by the text of the statute").

The United States Court of Appeals for the D.C. Circuit expressly considered whether the general fiduciary provisions of ERISA provided for an action premised on a violation of other federal statutes or regulations.  *See Clark*, 739 F.3d 28.  In *Clark*, plaintiff alleged that a plan fiduciary violated the ERISA fiduciary duty of care with respect to the administration of her retirement plan.  *Id.*  She alleged that the allocation of the assets of a retirement plan violated Section 401(a)(4) of the Internal Revenue Code because they provided for greater benefits to a more highly compensated employee than to her.  She argued that a violation of the tax code was also a violation of defendants' fiduciary duties to her.  The D.C. Circuit rejected that argument, holding that it could not infer a private cause of action to enforce Section 401(a)(4) of the tax code, which was not expressly applicable to ERISA.  *Clark*, 739 F.3d at 30.  The court further rejected

plaintiff's argument that Section 401(a)(4) could be "the source of a duty for a plan fiduciary." *Id.*[31]

On similar reasoning, the Seventh and Eleventh Circuits concluded that ERISA did not create a private cause of action for violations of Section 401 of the tax code, or Regulation U of the Exchange Act, respectively. *See Reklau v. Merchs. Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) (concluding that ERISA did not create a private cause of action for violations of Section 401 of the tax code where that section otherwise did not create a cause of action); *Useden v. Acker*, 734 F. Supp. 978, 979 (S.D. Fla. 1989) (concluding that ERISA did not create a private cause of action for violations of Regulation U of the Exchange Act by loaning the plan in excess of 50% of the value of the collateral pledged), *aff'd*, 947 F.2d 1563 (11th Cir. 1991).

In *Reklau*, the plaintiff brought a class action alleging that his company's pension plan violated ERISA and Section 401(a)(4) of the Internal Revenue Code because the plan discriminated in favor of executives and other highly compensated employees. The district court had dismissed the fiduciary duty claim, reasoning that the Internal Revenue Code did not create an enforceable right for plan participants. *Reklau v. Merchants Nat'l Corp.*, No. IP 84-1389-C, slip op. at 10-11 (S.D. Ind. Oct. 11, 1985).[32] On review, the Seventh Circuit affirmed. 808 F.2d at 629-30. The Court of Appeals first considered plaintiff's contention that ERISA incorporated the treasury regulations promulgated under Section 401(a)(4). The court rejected that assertion, explaining that "'ERISA is a comprehensive and reticulated statute'" and if Congress had meant to make the treasury regulations applicable under the statute, it would have done so explicitly. *Id.* at 631 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981)).

---

[31]    Clark alleged a second cause of action for breach of the fiduciary duty of care. She alleged that the plan administrators breached their fiduciary duty of care when they computed her contribution level based on the assumption that she had contributed 10% of her salary to the retirement plan, rather than 20% of her salary. *Id.* at 31. The contribution-level claim proceeded to trial.

[32]    Berman Decl., Ex. C.

Having rejected the plaintiff's claim under ERISA, the Seventh Circuit next considered the plaintiff's argument that Section 401 itself created substantive rights that could be enforced by an individual in a private cause of action.  The court rejected that argument as well, explaining that just as Section 401 did not create any substantive rights that could be enforced through a private right of action prior to the passage of ERISA, nothing in ERISA or the statute's legislative history "revealed any intent on the part of Congress" to create the implied cause of action proposed by the plaintiff.  *Id.* at 631.  Here, too, there is nothing in the language of Section 15(c) of the Exchange Act, or the enabling rules promulgated by the Securities and Exchange Commission, that are expressly applicable to ERISA.

### C.    ERISA Provides No Private Right of Action for Non-Performance In Accord With Industry Practice

There is no support at law for Plaintiff's claim that there is an express cause of action under ERISA when a fiduciary processes variable annuity transactions at a slower pace than others in an industry.  The Supreme Court previously considered and rejected analogous service delays as a basis for liability under ERISA.  In *Massachusetts Mutual Life Insurance*, 473 U.S. 134, for example, the Court held that ERISA did not provide a remedy for the untimely processing of Plaintiff's benefit claims.  In that case, plaintiff argued that a fiduciary to an employee benefit plan violated ERISA when it took 132 days to process her benefits claim, a period greater than the 120 day industry standard contemplated by Department of Labor ("DOL") regulations.  *Id.* at 137, 144. The Court rejected the claim, however, on the grounds that neither the DOL regulations nor the civil enforcement provisions in ERISA provided for recovery based upon failure to process plaintiff's benefit claims within the 120-day period.  Thus, even if all other employer disability committees processed benefits claims consistent with the DOL standard of 120 days or less, there was no civil action expressly authorized in ERISA.  The Court reasoned:  "Nothing in the

regulations or in the statute . . . expressly provides for a recovery from either the plan itself or from

its administrators if greater time is required to determine the merits of an application for benefits."

473 U.S. at 144.

Nor is there a basis to imply a private right of action when an ERISA fiduciary requires

more time to process transactions than its competitors.  Several factors must be met to infer that a

private right of action is implicit in a statute that does not expressly create one.  *Cort v. Ash*, 422

U.S. 66, 78 (1975).  First, is the plaintiff one of the class for whose benefit the statute was enacted?

Second, is there any indication of legislative intent to create or deny the remedy?  Third, is

implying the remedy that plaintiff seeks consistent with the purposes of the legislative scheme?

And last, is the cause of action one traditionally a concern of the states such that it would be

inappropriate to infer a cause of action based solely on federal law?  *See Massachusetts Mut. Life

Ins. Co.*, 473 U.S. at 145 n.13.

Two of the *Cort* factors are plainly inconsistent with Plaintiff's efforts to bootstrap

Defendants' allegedly inferior service levels into an ERISA violation:  legislative intention and

consistency with the legislative scheme.  These are the same two *Cort* factors that the Supreme

Court concluded were impediments to implying a remedy for the untimely processing of benefit

claims in *Massachusetts Mutual*.  *See id.* at 145.  For a detailed and carefully considered statute

such as ERISA, the absence of an action that Plaintiff seeks to imply is itself "strong evidence that

Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Id.*  Moreover, Plaintiff's effort to imply a cause of action based upon relative performance in an

industry is inconsistent with the legislative scheme that Congress enacted for the protection of

retirement assets.  As detailed in Point II, *infra* at 17, ERISA gives primacy to the use of plan

documents to define the rights and duties in the relationship.  The conduct that Plaintiff is

challenging (taking reasonable time to complete a transaction) is fully described in the prospectus governing the product that Plaintiff elected to purchase.  There is simply no deceit regarding the terms of the processing services that Defendants agreed to provide to Plaintiff.  When faced with an analogous request by a litigant to imply "a cause of action for . . . improper or untimely processing of benefit claims," the Supreme Court decisively declined the invitation.  *Id.* at 148.

For these reasons, this Court should dismiss Count One of the Complaint and decline to imply a private right of action under ERISA for alleged violations of the transaction processing regulations applicable to broker-dealers under the Exchange Act.

## II.   THERE CAN BE NO BREACH OF DUTY OF LOYALTY OR A PROHIBITED TRANSACTION WHERE PLAINTIFF RECEIVES PRECISELY WHAT DEFENDANTS PROMISED TO PROVIDE IN THE PROSPECTUS

Counts Two and Three of the Complaint allege that Defendants breached their duty of loyalty to Plaintiff, and engaged in prohibited transactions under ERISA, by keeping alleged "investment profits" resulting from market fluctuations between the effective date and the processing date for her transaction request.  This Court rejected these same claims in the *Walker/Bauer-Ramazani* action.

In a Memorandum and Order, dated September 7, 2012, this Court ruled:  "Walker's claims were dismissed because Defendants demonstrated he received what the prospectus governing his accounts required:  payment within seven days from the business day chosen by his transfer to take effect."[33]  Relying on *Faber v. Metropolitan Life Ins. Co.*, No. 08-civ-10588, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir. 2011), this Court explained the reason that the fiduciary duty of loyalty claims were not actionable:

> Well, frankly, I don't see the distinction between *Faber* and the case here.  Mr. or Professor Walker received his money in the seven days.  The prospectus that both

---

[33]    *Bauer-Ramazani*, No. 09-190, Mem. & Order at 3 (Sept. 7, 2012) (ECF No. 186).

parties admit is part of the case anyway is clear that the payments were made within seven calendar days after they received the information we need to process the request.  So as far as Mr. Walker's concerned, Professor Walker, I am going to grant the motion for summary judgment.  And I'm relying primarily on *Faber*, but also, frankly, the common sense that if a payment is going to be made on the date that it's requested it's going to take some time for a payment to be made.[34]

This Court correctly rejected this claim in *Walker/Bauer-Ramazani*, and the Court's reasoning applies with full force here to Counts Two and Three of the *Cummings* Complaint.  A breach of the duty of loyalty under Section 404(a)(1) of ERISA requires that Plaintiff demonstrate that Defendants failed to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1).  Like Walker, Plaintiff cannot show that actions taken in accordance with prospectus disclosures and the neutral transaction processing practices detailed in those documents are contrary to the interests of any plan participant.

To the contrary, Plaintiff received the value of her account in accordance with the processing procedures described in the prospectus.  A fiduciary that complies with a plan's lawful terms and "provides the beneficiaries the benefits they were due under the plan" does not violate the "exclusive purpose" requirement of Section 404(a).  *Faber v. Metro. Life Ins. Co.*, No. 08-civ-10588, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir. 2011); *see also Morse v. Stanley*, 732 F.2d 1139, 1145-46 (2d Cir. 1984) (rejecting ERISA loyalty claim based on trustees' failure to accelerate benefits where the plan did not require acceleration prior to retirement); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (finding no violation of ERISA's exclusive purpose requirement "[b]ecause Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms, [and defendant] provided Plaintiffs with their benefits due").  To receive something more favorable

---

[34]     *Bauer-Ramazani*, No. 09-190, Hr'g Tr. 23:19-24:6 (Sept. 19, 2011) (ECF No. 143).

than prescribed in the prospectuses would amount to a windfall, which is not afforded under ERISA. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006); *accord Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) ("ERISA does no more than protect the benefits which are due to an employee under a plan.").

The Court's reasoning is supported by the Supreme Court's decision in *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), which emphasized the supremacy of plan terms. In *McCutchen*, after a health-plan participant recovered damages from a third-party tortfeasor, the plan administrator sought reimbursement of the entire amount it had paid the participant for medical expenses, as provided for by the plan terms. The participant argued that unjust enrichment and other equitable principles should limit the amount of the plan's reimbursement. The Court held that the agreement, as evidenced by the plan document, "itself becomes the measure of the parties' equities" and reigns supreme over any claims for equitable relief not provided for by the plan. *Id.* at 1548 ("The plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there."); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 612 (2013) (emphasizing the importance of enforcing ERISA plan terms as written). In line with *McCutchen*, and as this Court recognized in *Walker*, the clear terms of the plan providing that transactions will be processed within seven days after "good order" represent the agreement of the participant and the plan administrator and cannot be trumped by Cummings' vague allegations of industry standards.

Count Three of the Cummings Complaint is similarly infirm. In dismissing Bauer-Ramazani's claim that Defendants' processing procedures constituted prohibited use of a plan asset for the benefit of a party in interest, this Court correctly ruled that Bauer-Ramazani failed to allege that Defendants had knowledge that neutral transaction processing practices would

19

injure a plan. *Bauer-Ramazani*, No. 09-190, Mem. & Order at 14 (Nov. 27, 2013) (ECF No. 404) (dismissing Section 406(a) claim). With no more particularized allegations than those twice rejected by this Court, Plaintiff repleads the same tired claim that this Court previously considered and rejected in *Walker/Bauer-Ramazani*.

Cummings now claims that the legal failure is one of ERISA Section 406(b), rather than Section 406(a). This newly asserted statutory violation is no more tenable than that rejected in *Walker/Bauer-Ramazani*. The self-dealing contemplated in Section 406(b) is a prohibition against putting the interests of the fiduciary before the interests of the plan. The neutral transaction processing practices detailed in the prospectus – and followed by a faithful fiduciary – benefit neither a fiduciary nor a party in interest. This was a central tenet of this Court's prior rulings in *Walker*/*Bauer-Ramazani* and distinguishes the practices challenged in this action from the conduct proscribed in Section 406(b). *See, e.g.*, *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1214 (2d Cir. 1987) (use of plan assets to invest in companies in which the fiduciary owned an equity interest); *LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007) (use of plan assets for salary increases without trustee approval); *Bd. of Trs. of Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-civ-9333, 2013 WL 1234818, at *8 (S.D.N.Y. Mar. 27, 2013) (use of plan assets to keep company afloat at same time that fiduciary liquidated his own investment in the company).

Defendants dispute that they received any benefit from the seven-day delay in processing Cumming's transactions. Accepting Plaintiff's factual allegations as true, however (as this Court is required to do on a motion for judgment on the pleadings), does not result in a finding that receipt by Defendants of any investment gains between the effective and processing dates is a prohibited transaction. ERISA's prohibited transaction provisions are designed to ensure that

20

fiduciaries act in the interest of participants and beneficiaries.  They do not give rise to liability where fiduciaries "tak[e] action which, after careful and impartial investigation, they reasonably conclude best . . . simply because it incidentally benefits the corporation or, indeed, themselves." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  The neutral transaction processing practices outlined in the prospectus – i.e., payments within seven calendar days after the effective date as valued on the effective date – are exemplary of conduct designed in the interest of participants and beneficiaries.  These practices insulate beneficiaries from markets that perform poorly (or in a volatile fashion) after Defendants receive their transaction requests in good order.[35] Because Plaintiff received precisely what Defendants promised her, through the application of neutral transaction processing practices, Counts Two (breach of loyalty) and Three (prohibited transaction) should be dismissed.

---

[35]     Moreover, implementing such neutral transaction processing practices does not constitute fiduciary conduct. *See* 29 C.F.R. § 2509.75-8 (D-2 Q & A) (persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform administrative functions for an employee benefit plan, such as calculations of benefits, within a framework of policies, interpretations, rules, practices and procedures made by other persons, are not performing fiduciary functions with respect to the plan).

**CONCLUSION**

For the reasons stated above, Defendants' motion for judgment on the pleadings should be granted and the Complaint should be dismissed for failure to state a claim for relief.

Dated:  November 2, 2015

WILMERHALE LLP

By:      /s/ Lori A. Martin
Lori A. Martin (*pro hac vice*)
250 Greenwich Street
7 World Trade Center
New York, NY 10017
(212) 295-6412
lori.martin@wilmerhale.com


 /s/ Richard C. Carroll
Richard C. Carroll
PHILLIPS, DUNN, SHRIVER & CARROLL, P.C.
147 Western Avenue
Brattleboro, VT 05301

Howard Shapiro (*pro hac vice*)
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

## CERTIFICATE OF SERVICE

I, Iya Megre, certify that on November 2, 2015, I served a copy of Defendants' Notice of Motion and Motion for Judgment on the Pleadings, Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings, and Declaration of David Berman in Support of Defendants' Motion for Judgment on the Pleadings upon the following counsel of record via ECF:

| | | |
|---|---|---|
| Howard Shapiro, Esq. at howshapiro@proskauer.com | Kenneth Hartmann, Esq. at krh@kttlaw.com | Norman C. Williams, Esq. at nwilliams@gravelshea.com |
| Robert B. Hemley, Esq. at rhemley@gravelshea.com | R. Bradford Fawley, Esq. at bfawley@drm.com | Thomas A. Ronzetti, Esq. at TR@kttlaw.com |

The documents have been filed electronically and are available for viewing and downloading from the ECF system.

 /s/ Iya Megre
Iya Megre (*pro hac vice*)
250 Greenwich Street
7 World Trade Center
New York, NY 10017
(212) 295-6263
iya.megre@wilmerhale.com